Donald Ray BRICK, Appellant,

v.

The STATE of Texas, Appellee.

No. 207–86.

Court of Criminal Appeals of Texas, En Banc.

Oct. 21, 1987.

Ken J. McLean, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., & Calvin A. Hartmann, Lyn McClellan & Jaime Esparza, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Following his plea of guilty before the court appellant was convicted of the second degree felony offense of possession of marihuana in a quantity of 50 pounds or less but more than 5 pounds. Article 4476–15, § 4.051(b)(4), V.A.C.S. His punishment was assessed at ten years, probated, and a fine of $5,000.00. Along the way the trial court overruled appellant's motion to suppress the marihuana, which appellant contended was discovered as a result of his illegal arrest and the subsequent warrantless search of his house.

On appeal to the Fourteenth Court of Appeals appellant argued that the arresting officers lacked probable cause either to arrest him or to search his house, that his arrest was unlawful in that it failed to meet any of the exceptions to warrantless arrest enumerated in Chapter 14, V.A.C.C.P., and that any consent to the warrantless search of his house was obtained through an exploitation of his illegal arrest, and hence inadmissible under Article 38.23, V.A.C.C.P. The court of appeals affirmed the conviction in an unpublished opinion. *Brick v. State,* No. B14–84–871CR (Tex. App.—Houston [14th], delivered December 26, 1985). Finding simply that the consent which had given rise to the warrantless

search of his house had been given "voluntarily" by appellant following his arrest, the court of appeals declined to address the legality of that arrest, either from the standpoint of whether the arresting officers had probable cause to effect it, or of whether they reasonably believed appellant was "about to escape," Article 14.04, V.A. C.C.P., such that an arrest warrant was not required. In his petition for discretionary review appellant assails the failure of the court of appeals to address the legality of his arrest, contending that the arrest was in fact unlawful, and that this initial illegality fatally tainted his consent to search the house. We granted appellant's petition to examine this contention. Tex.R.App.Pro., Rule 200(c)(3) and (6).

### I.

The facts of the case, viewed in the light most favorable to the trial court's disposition of the motion to suppress, are fairly straightforward. Sometime during or prior to the evening of May 7th, 1984, Officer W.L. Kendrick of the narcotics division of the Houston Police Department received information from a confidential informant that the residents of 9619 Orangevale—appellant and two roommates whose names the informant did not know—were harboring "some cocaine" in their home. The informant, who had supplied correct information on two prior occasions, described the exterior composition of the house and its interior layout, and predicted that a maroon Corvette bearing a certain license plate number would be found there. This car, he said, belonged to appellant. At about 7:00 p.m. Kendrick and Officers Duke and Eslab proceeded to the address given and found a house matching the informant's exterior description and a maroon Corvette bearing the foretold license plate number. The car was found to be registered in appellant's name. On the basis of this corroboration Kendrick returned to the station "to type the search warrant."

Between 8:00 and 9:00 p.m. the informant again contacted Kendrick and told him appellant "was going to leave the residence and probably not return for a day or two." Shortly thereafter Eslab and Duke, maintaining surveillance on the house, informed Kendrick that a person "believed to be" appellant was getting into the Corvette with a woman. Kendrick had "finished the warrant" by this time, but had not heard from the District Attorney's office as to what judge was on call to sign it. He advised Eslab and Duke to arrest appellant.

Eslab and Duke followed appellant and his companion to a nearby convenience store and arrested them both as they came out. Appellant was immediately handcuffed, after which Duke informed him that the officers "were in the process of having a narcotics warrant drawn up for his residence." Appellant indicated "he would cooperate in any way[,]" and he agreed to sign a consent form.[1] Still waiting for the District Attorney's office to call, Kendrick was notified of this turn of events. Consequently he "disregarded the search warrant" and drove out to the convenience store. Upon Kendrick's arrival, appellant was given a consent form which he read and indicated he understood. He was then uncuffed long enough to sign and date it.[2] Subsequently appellant's house was searched. Approximately ten pounds of marihuana, three and a half grams of cocaine and $26,000.00 in cash were found in his bedroom.

At the pretrial hearing on the motion to suppress appellant virtually conceded that consent was given voluntarily. During the

---

1. Appellant testified he was willing to cooperate with the officers because they told him they were looking for "quantities of cocaine." After he admitted he had marihuana and a small amount of cocaine in the house, the officers told him they would "overlook" these. Appellant maintained that with this understanding he consented to the search. Kendrick, who was not yet on the scene, testified that he never offered to overlook anything. Duke, who also testified

at the pretrial hearing on the motion to suppress, was not questioned as to this alleged understanding. At any rate, appellant ultimately conceded the voluntariness of his consent. See *post*.

2. The consent form does not appear in the appellate record as it comes to this Court.

prosecutor's redirect examination of Kendrick, defense counsel interjected:

"... [the consent form] was voluntarily signed by [appellant]. My dispute will be with the legality of the arrest."

True to his word, counsel argued in his summation to the trial court:

"... I'm certainly aware that consent obtained by police officers to search a residence is not involuntary, because there is conversation regarding that if you don't sign the consent, we can get a search warrant, anyway, and would cite the Court that authority. However, I don't think it's the issue in the case."

Having thus again practically admitted that appellant's consent was voluntary, counsel proceeded to argue that irrespective of the voluntariness of the consent, it was nevertheless tainted because "secured through the exploitation of an illegal arrest[.]" Appellant took the same tack on appeal, asserting in his brief that "[t]he consent was obtained through the exploitation of appellant's unlawful and illegal arrest and, therefore, cannot be used as a basis to uphold the search." In making this argument appellant relied by analogy upon, *inter alia, Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982), in which apparently voluntary confessions following illegal arrests were held inadmissible as fruit of the poisonous tree.

The court of appeals focused almost exclusively, however, on the question whether appellant's consent to search was voluntary. Noting that the fact of arrest alone will not operate to vitiate voluntariness of consent, the court of appeals concluded that under the totality of the circumstances, voluntariness was shown. Only passing reference was made to appellant's contention, *viz:* "Appellant's consent removed the taint of an illegal arrest, if any, and vitiated the need for a showing of probable cause." In giving such short shrift to the essence of appellant's complaint, the court of appeals erred.

## II.

In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) the Supreme Court opined:

"... We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)."

371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. The first occasion this Court had to apply the attenuation of taint analysis in the context of consent following an illegal arrest came in *Potts v. State,* 500 S.W.2d 523 (Tex.Cr.App.1973). There it was held that "even assuming that the arrest and detention were illegal, [defendant's] consent to search, voluntarily made, 'dissipated the taint of the arrest' and made the fruits of the search admissible into evidence. *Phelper v. Decker,* [401 F.2d 232 (CA5 1968)]." 500 S.W.2d at 526–27. It will be observed that the analysis in *Potts,* supra, sounds very like that which the court of appeals made in the instant cause. Subsequent caselaw, however, has rendered such a simple analysis untenable.

To begin with, *Phelper v. Decker,* supra, did not hold that voluntariness of consent following an illegal arrest would automatically attenuate the taint of the illegality and thus render admissible the fruit of the consensual search in every case. Though predating *Brown v. Illinois,* supra, by some seven years, *Phelper* recognized circumstances to be considered in determining whether taint has been attenuated which sound much like those later set out in *Brown.* One consideration was said to be "the proximity of the illegal arrest to the procurement" of the evidence sought to be suppressed. 401 F.2d at 237. Another was said to be "intervening occurrences between the illegal arrest and the acquisition of the evidence sought to be used."

*Id.* The "most important" consideration was deemed to be "whether the arrest was illegal as a matter of failure to comply with technical requirements or whether the arrest and subsequent search and seizure amounted to a gross violation of legal processes." *Id.*, at 237–38. "Taking all these factors into consideration, *along with* the State Trial Judge's and jury's finding that Phelper's consent was voluntary and the product of his own free will," [3] the Fifth Circuit concluded that the consensual search was not tainted. *Id.*, at 238. Later Fifth Circuit decisions applying *Phelper*, however, were to find dissipation of taint when consent to search after an arguably illegal arrest was voluntary, given in uncoercive circumstances, and following recitation of the defendant's *Miranda* warnings.[4] See *Bretti v. Wainwright*, 439 F.2d 1042, 1046 (CA5 1971); *United States v. Fike*, 449 F.2d 191, 194 (CA5 1972).

■ However, in *Brown v. Illinois*, supra, decided in 1975, the Supreme Court held that the giving of *Miranda* warnings would not *per se* remove the taint of a confession which, though voluntarily given, followed on the heels of an unconstitutional arrest. *A fortiori*, such warnings can no longer be held necessarily sufficient in themselves to attenuate a tainted consent to conduct a warrantless search, as in *Bretti* and *Fike*, both supra, since they do not even address the suspect's right to refuse to *consent*. *Brown* delineated a set of considerations for determining attenuation of tainted confessions that is reminiscent of

the *Phelper* Court's test for tainted consent. Rejecting, application of a "but/for" test, as had *Wong Sun*, supra, the Court instead observed:

"... The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, [citation omitted], and, particularly, the purpose and flagrancy of the official misconduct are all relevant. [Citation omitted.] The voluntariness of the statement is a *threshold requirement*. [footnotes omitted.]"

422 U.S. at 603–04, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 427. A number of Fifth Circuit cases decided since *Brown v. Illinois*, supra, seem still to suggest that consent following illegal arrest will invariably be freed of taint so long as the consent was given voluntarily—although the government "will have a much heavier burden to carry than when the consent is given after a permissible stop." *United States v. Ballard*, 573 F.2d 913, 916 (CA5 1978). See also *United States v. Troutman*, 590 F.2d 604, 606–07 (CA5 1979); *United States v. Ruigomez*, 702 F.2d 61, 65 (CA5 1983).[5] Other Fifth Circuit cases have applied the full panoply of factors found relevant in *Brown*, including but not limited to the question whether the consent given was voluntary under the totality of the cir-

**3.** All emphasis supplied unless otherwise indicated.

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** However, to say that legality *vel non* of an arrest should affect the weight of the State's burden as to voluntariness of any consent obtained thereafter seems anomalous. The degree of coerciveness involved in any given arrest is not a function of its legality. The State's burden would appear to be the same whether the arrest is legal or not; either way the State must show by clear and convincing evidence that the consent was voluntarily given and not the result of duress or coercion, express or implied, under the totality of the circumstances. E.g., *Dickey v. State*, 716 S.W.2d 499, 504 (Tex.Cr.App.1986). What is this "heavier burden," and how can it be

said to vindicate the purpose of the federal exclusionary rule and our own Article 38.23, V.A.C.C.P., to deter unlawful conduct on the part of law enforcement personnel and to close the doors of our courts to illegally obtained evidence? See *Brown v. Illinois*, supra. While once it is found voluntary, consent to search will certainly dispel the illegality of a subsequent warrantless *search*, the voluntariness determination alone does not fully account for the misfeasance of the police in having conducted an illegal *arrest* and thereby *obtaining* that consent. Thus, while a determination that consent was voluntary is a necessary component of a finding of attenuation of taint, it cannot be said, as did the court of appeals here, that it ends the analysis.

cumstances, under *Schneckloth v. Busta-monte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), in deciding dissipation of taint of a consent following illegal arrest. *United States v. Wilson*, 569 F.2d 392, 396–97 (CA5 1978); *United States v. Berry*, 670 F.2d 583, 604–05 (CA5 1982); *United States v. Cherry*, 759 F.2d 1196, 1210–12 (CA5 1985). Other Federal Circuits concur that a voluntariness determination does not end the inquiry. E.g., *United States v. Perez–Esparza*, 609 F.2d 1284, 1288–91 (CA9 1979); *United States v. Sanchez–Jaramillo*, 637 F.2d 1094, 1098–1100 (CA7 1980); *United States v. Gooding*, 695 F.2d 78, 84 (CA4 1982); *United States v. Thompson*, 712 F.2d 1356, 1361–62 (CA11 1983). The Supreme Court seems tacitly to have adopted this approach. *Florida v. Royer*, 460 U.S. 491, 501, 507–08, 103 S.Ct. 1319, 1326, 1329, 75 L.Ed.2d 229, 239, 243 (1983); cf. *United States v. Watson*, 423 U.S. 411, 414, 96 S.Ct. 820, 823, 46 L.Ed.2d 598, 603 (1976).

In his treatise on the Fourth Amendment Professor LaFave has observed:

"... While there is sufficient overlap of the voluntariness and fruits tests that often a proper result may be reached by using either one independently, it is extremely important to understand that (i) the two tests are not identical, and (ii) consequently the evidence obtained by the purported consent should be held admissible only if it is determined that the consent was *both* voluntary and not an exploitation of the prior illegality." [6]

3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment (2d ed. 1987), § 8.2(d) at 190.

---

**6.** Emphasis in the original.

**7.** In *Daniels v. State*, supra, the defendant was detained at the Houston Intercontinental Airport by a Houston police officer who immediately obtained permission to inspect the contents of his luggage. Having found the detention illegal, we did not reach the question of voluntariness of the consent "because the consent, valid or not, was the result of the illegal stop and thus fatally tainted by the illegality of the stop." *Id.*, at 707. This holding should not be interpreted to mean that any consent ob-

In cases decided since *Potts v. State*, supra, this Court has recognized that a determination of voluntariness does not necessarily dispose of the question of admissibility of evidence obtained from a consensual search following an illegal arrest or detention. Albeit without previously spelling out with any particularity what other factors are worthy of consideration in deciding whether the taint of an illegally obtained consent to search has been attenuated, we have at least observed on a number of occasions that, e.g., "[t]he detention, if unlawful, may also have tainted appellant's apparent voluntary consent to search the trunk." *Luera v. State*, 561 S.W.2d 497, 498 (Tex.Cr.App.1978). See also *McDougald v. State*, 547 S.W.2d 40, 42 (Tex.Cr.App.1977); *Armstrong v. State*, 550 S.W.2d 25, 32 (Tex.Cr.App.1978) (Opinion on State's motion for rehearing); *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Cr.App. 1985); *Dickey v. State*, 716 S.W.2d 499 (Tex.Cr.App.1986); *Daniels v. State*, 718 S.W.2d 702 (Tex.Cr.App.1986).[7]

While this Court has not heretofore provided specific guidelines for measuring attenuation of a tainted consent to search, LaFave suggests a number of factors to be considered which are even more detailed than those enumerated in *Brown v. Illinois*, supra, for tainted confessions:

"... In determining whether the consent was, as the Court put it in *Brown*, 'obtained by exploitation of an illegal arrest,' account must be taken of the proximity of the consent to the arrest, whether the seizure brought about police observation of the particular object which they sought consent to search, whether the illegal seizure was 'flagrant police

---

tained following an illegal detention or arrest will be deemed inadmissible *per se.* Such a holding would be as obnoxious as the notion that voluntariness of consent automatically vitiates the taint of the illegal arrest which made it possible. Rather, we simply determined on the facts of *Daniels* that the defendant's permission to search, given upon specific request and immediately following a stop which was not even justified by a reasonable suspicion, was fatally tainted irrespective of whether it was voluntary. Compare *Florida v. Royer*, supra.

misconduct,' whether the consent was volunteered rather than requested by the detaining officers, whether the arrestee was made fully aware of the fact that he could decline to consent and thus prevent an immediate search of the car or residence, and whether the police purpose underlying the illegality was to obtain the consent."

LaFave, supra, at 193–94. We now hold that before it can be determined that evidence derived from a warrantless but consensual search following an illegal arrest is admissible, it must first be found, by clear and convincing evidence, not only that the consent was voluntarily rendered, but also that due consideration of the additional factors listed above militates in favor of the conclusion that the taint otherwise inherent in the illegality of the arrest has dissipated. The burden, of course, is on the State.

### III.

Because the court of appeals declined to reach the question whether appellant's arrest was legal, let alone whether the taint of any illegality had dissipated by the time appellant consented to the search of his house, we remand the cause to that court for its reconsideration. That court may conclude that, even assuming the arrest was illegal, taint was attenuated under the circumstances, and thus avoid deciding whether the arrest was in fact unlawful. However, it may be important to its taint analysis for the court to determine in what way the arrest was illegal, if it was. Appellant contends the officers lacked probable cause. If that is correct, the arrest was a violation of appellant's constitutional rights under both federal and state constitutions. Because there were no grounds for the officers to believe he was about to escape, appellant further contends, his warrantless arrest was also perpetrated in violation of Article 14.04, supra. Though this latter illegality would stem from a violation of statute rather than constitution, in either event a taint analysis would be required. *Bell v. State*, 724 S.W.2d 780, 787 (Tex.Cr.App.1986); *Self v. State*, 709 S.W.2d 662, 665 (Tex.Cr.App.1986). But if

the illegality, if any, rests alone upon the violation of the statute, this may well influence the court of appeals' assessment of the purposefulness and flagrancy of the police conduct, and, all other factors weighing equally, could ultimately tip the balance. See *Self v. State*, supra, at 667–68.

The judgment of the court of appeals is reversed and the cause is remanded for further proceedings consistent with this opinion.

WHITE, J., concurs in the result.