Order filed September 7, 2006



















 
 
  
 
 







 
 
  
 
 




Order filed September 7, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00022-CR 

                                                    __________

 

                                 DAVID EDWARD MYERS, Appellant

                                                             V.

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 230th District Court

                                                          Harris County,
Texas

                                                   Trial
Court Cause No. 986060

 



 

                                                                     O
R D E R

 

We overrule David Edward Myers=s motion for rehearing in this case;
withdraw our previous opinion and judgment dated July 13, 2006; and issue the
following opinion and judgment dated September 7, 2006.

 

TERRY McCALL

JUSTICE

September 7, 2006

Do not publish this page only. 
See Tex. R. App. P.
47.2(b).

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











 
 
  
 
 







 
 
  
 
 




Opinion filed September 7, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of
Appeals

                                                                 ____________

 

                                                          No. 11-05-00022-CR 

                                                     __________

 

                                 DAVID EDWARD
MYERS, Appellant

                                                             V.

                                        STATE OF TEXAS, Appellee

 



 

                                         On
Appeal from the 230th District Court

                                                          Harris County,
Texas

                                                   Trial
Court Cause No. 986060 

 



 

                                                                   O
P I N I O N

 

David Edward Myers entered a plea of guilty to the
felony offense of possession of cocaine weighing more than four grams but less
than two hundred grams.  The trial court
placed appellant on deferred adjudication for six years.  In two points of error, appellant argues that
the trial court erred in denying his motion to suppress because the State
failed to demonstrate that probable cause existed for his warrantless arrest
based either on his expired inspection sticker or on a confidential informant=s tip. 
The tip had led to a proposed purchase of six ounces of cocaine.  We affirm.

Background Facts








At the hearing on appellant=s
motion to suppress, Officer R.R. Romano testified that he had been with the
narcotics division of the Houston Police Department for twenty years.  A confidential informant called Officer
Romano and told him that appellant was trafficking in narcotics; appellant had
called the informant about some cocaine. 
Officer Romano had successfully used information from the informant ten
to fifteen times in the past and considered the informant to be both credible
and reliable.

Officer Romano asked the informant to set up a
meeting with appellant to have appellant 
deliver six ounces of cocaine to the informant.  They agreed on the location for the delivery
and that the delivery would be early in the afternoon of April 28, 2004.  The informant described appellant as a six
foot tall forty-year-old white male weighing two hundred pounds with thin hair
and said that appellant would be driving a four-door green Acura Legend.  The informant told Officer Romano that appellant
would be leaving from his residence at the Saint Germaine Apartments on Main Street in
downtown Houston.

Based on the information about the proposed deal
with appellant, Officer Romano set up a team of officers for the afternoon of
April 28.  Officer T.D. Galligan, who
subsequently made the traffic stop of appellant, was given a description of
appellant=s car;
Officer Galligan was stationed in a church parking lot near the corner of
Houston Avenue and Washington Street. 
Officer Romano wanted to corroborate the informant=s information, and he began his
surveillance at the Saint Germaine Apartments. 
At approximately the time that appellant was supposed to leave to meet
the informant, Officer Romano saw appellant leaving the apartment complex in a
four-door green Acura Legend.  Although
appellant was seated in the car, he appeared to match the physical description
that the informant had given Officer Romano. 
Officer Romano followed appellant and told Officer Galligan to stop
appellant=s car.

Officer Galligan testified that he made a traffic
stop of appellant because he saw that appellant had an expired inspection
sticker.  He said that he had been told
to stop the green Acura Legend because there was a possible narcotics suspect
in it.  After the stop, Officer Galligan
verified that the inspection sticker was expired.  Officer Galligan took appellant=s driver=s
license back to his patrol car to verify it; Officer Romano had arrived by then
and met Officer Galligan at the patrol car. 
Officer Galligan told Officer Romano that he observed an expired
inspection sticker, and Officer Romano noted the expired inspection sticker in
his report.  Officer Romano estimated
that he arrived about three minutes after Officer Galligan made the stop.








Officer Galligan said that he placed appellant in
the back of his patrol car after Officer Romano arrived.  However, in answer to a subsequent question,
Officer Galligan said that appellant was in the backseat of his patrol car
under arrest when Officer Romano approached him to speak with him.  Officer Galligan stated a number of times
that he arrested appellant for an expired inspection sticker.  Early in his testimony, Officer Galligan said
that appellant was put in the back of his patrol car after the stop, that
appellant was under arrest, and that appellant was not free to leave.  Immediately thereafter, however, when asked
why appellant was under arrest, Officer Galligan said that, A[a]t that time, he was being detained
by the Narcotics Division.@  Referring to Officer Galligan=s arrest, appellant=s attorney asked who transported
appellant to the station after the arrest. 
Officer Galligan answered, AWe
never went to the station after the arrest.@
 Officer Galligan also said that
appellant was in and out of the patrol car several times.  Officer Romano first testified that appellant
was outside of Officer Galligan=s
patrol car when Officer Romano first spoke with appellant, but then said that
appellant may have been in the back of Officer Galligan=s
patrol car when he arrived.

When appellant learned that he was being detained
as part of a narcotics investigation, he insisted on speaking to Officer Romano
alone.  Officer Romano and appellant
visited away from the others.  Officer
Romano first asked appellant whether he had any large sums of money on him.
Appellant responded that he had about $3,500 cash in his pocket, which corroborated
the information that the confidential informant had provided to Officer
Romano.  Appellant voluntarily signed a
form consenting to a search of his vehicle. 
Officer Romano testified that appellant read the written consent form
before signing it.  The written consent
was witnessed by Officer Romano and another drug enforcement agent.  Officer Romano testified that he made no
threats or promises to appellant when he asked appellant to sign the consent to
search form.  Officer Galligan testified
that at no time did he see Officer Romano act in an aggressive manner and that
he saw appellant sign the consent to search. 
Officer Galligan also testified that appellant was cooperative with him
and Officer Romano.  Appellant also gave
Officer Romano credible information that led to the arrest of another person
for drugs within forty-five minutes after Officer Romano arrested appellant.

Officer Romano placed appellant back in Officer
Galligan=s patrol
car for safety purposes while Officer Romano searched appellant=s car. 
Although appellant said he did not have any contraband in his car,
Officer Romano found six ounces of cocaine inside appellant=s gym bag.  Officer Romano then advised appellant that he
was under arrest for possession of cocaine.

Officer Romano asked appellant if he had any more
narcotics at his home, and appellant said that he did.  Appellant signed a consent to search his
residence at the Saint Germaine Apartments. The officers discovered an
additional thirteen grams of cocaine and some marihuana in one of appellant=s apartments.








After the hearing on appellant=s motion to suppress, the trial court
denied the motion without making any written findings.

Standard of Review

A trial court=s
ruling on a motion to suppress is reviewed for an abuse of discretion.  Balentine v. State, 71 S.W.3d 763, 768
(Tex. Crim.
App. 2002).  In reviewing a trial court=s ruling on a motion to suppress,
appellate courts must give great deference to the trial court=s findings of historical facts as long
as the record supports the findings.  Torres
v. State, 182 S.W.3d 899, 902 (Tex.
Crim. App. 2005); Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App.
1997).  Because the trial court is the
exclusive fact-finder, the appellate court reviews evidence adduced at the
suppression hearing in the light most favorable to the trial court=s ruling.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim.
App. 2000).  We also give deference to
the trial court=s rulings
on mixed questions of law and fact when those rulings turn on an evaluation of
credibility and demeanor.  Guzman,
955 S.W.2d at 89.  Where such rulings do
not turn on an evaluation of credibility and demeanor, we review the trial
court=s actions
de novo.  Id.; Davila v. State, 4 S.W.3d
844 (Tex. App.CEastland
1999, no pet.).  Although the legal issue
of probable cause to arrest is reviewed de novo in this case, the determination
of that issue turns on mixed questions of law and fact.

When the trial court does not make explicit
findings of fact, we review the evidence in the light most favorable to the
court=s ruling
and assume the court made findings that are supported by the record and
buttress its conclusion.  See Torres,
182 S.W.3d at 902; Carmouche, 10 S.W.3d at 327-28.  We are obligated to uphold the trial court=s ruling on appellant=s motion to suppress if that ruling was
supported by the record and was correct under any theory of law applicable to
the case.  State v. Ross, 32
S.W.3d 853, 856 (Tex.
Crim. App. 2000).

Warrantless Arrest for Expired Inspection
Sticker








In appellant=s
first point, he argues that Officer Galligan did not have probable cause to
arrest appellant because Officer Galligan was not in a position to observe the
inspection sticker and that the inspection sticker had not in fact expired.  Appellant contends that the arrest was
illegal because it lacked probable cause. 
Appellant asserts that A[i]t
is undisputed that [a]ppellant was immediately arrested by [Officer] Galligan
for having an expired inspection sticker, placed in the latter=s patrol unit, and was not free to
leave.@  Based on this premise, appellant argues that
it was an immediate warrantless arrest by Officer Galligan, not an
investigative detention, and that the immediate warrantless arrest tainted
everything that followed.  For the
purposes of our discussion of appellant=s
first point, we assume that Officer Galligan immediately arrested appellant for
an expired inspection sticker. 

In Texas,
a police officer may arrest an individual without a warrant only if (1) there
is probable cause with respect to that individual and (2) the arrest falls
within one of the exceptions specified in Tex.
Code Crim. Proc. Ann. arts. 14.01-.04 (Vernon 2005 & Supp.
2006).  McGee v. State, 105 S.W.3d
609, 613-14 (Tex.
Crim. App. 2003); Stull v. State, 772 S.W.2d 449, 451 (Tex. Crim.
App. 1989).  Article 14.01(b)
provides:  AA
peace officer may arrest an offender without a warrant for any offense
committed in his presence or within his view.@

A police officer has the authority to stop and
temporarily detain a driver who has violated a traffic law.  Armitage v. State, 637 S.W.2d 936, 939
(Tex. Crim. App. 1982).  Any peace
officer may arrest without a warrant a person found committing a violation of
the Texas
traffic laws because a violation of the traffic laws constitutes probable cause
to arrest the violator.  Tex. Transp. Code Ann. ' 543.001 (Vernon
1999); State v. Gray, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005);  Snyder v. State, 629 S.W.2d 930, 934
(Tex. Crim. App. 1982).

Appellant=s
arguments concerning whether Officer Galligan was in a position to observe the
inspection sticker as appellant drove past and whether the inspection sticker
had expired turn on the credibility and statements of the witnesses.  As the trier of fact, the trial court was the
exclusive judge of the credibility of the witnesses and the weight to be given
to their testimony.  State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999); Joseph v. State, 897
S.W.2d 374, 376 (Tex. Crim. App. 1995). 
Officer Galligan testified that appellant was not traveling fast because
there was a stoplight and that he saw that the inspection sticker had
expired.  After the traffic stop, Officer
Galligan verified that the inspection sticker had expired and then asked for
appellant=s
license. Officer Romano also testified that, although he did not look at the
inspection sticker, Officer Galligan told him that the inspection sticker had
expired.








Appellant called Greg Morrison, a worker at an
Express Lube, as a witness.  Morrison
testified that a vehicle inspection report was issued to a 1995 Acura Legend
with appellant=s license
number and that the inspection would have been valid on April 28, 2004.  However, Morrison stated that he did not know
if the inspection sticker was actually placed on appellant=s vehicle.  Tex.
Transp. Code Ann. '
548.602 (Vernon Supp. 2006) states that a person may not operate a motor
vehicle unless a current and appropriate inspection sticker is displayed on the
vehicle.  In its brief, the State
observes that appellant introduced a photograph of his car into evidence but
did not introduce a picture of his allegedly valid inspection sticker.

Because Officer Galligan could not remember the
precise dates on appellant=s
inspection sticker or its color, appellant argues that Officer Galligan=s testimony that he saw the expired
sticker from a distance of two feet was conclusory.  In support of his argument, appellant relies
on Ford v. State, 158 S.W.3d 488 (Tex. Crim. App.  2005), which is distinguishable.  The officer in Ford stopped the
defendant for the traffic violation of following another vehicle too closely.[1]  The officer=s
statement that he saw the defendant Afollowing
too close@ was held
to be conclusory because there was no testimony of objective facts or
circumstances that would allow an appellate court to determine whether the
officer=s
conclusion was reasonable or not.  Tex. Transp. Code Ann. '  545.062(a) (Vernon 1999) lists a number of
criteria B the
assured clear distance between the vehicles, the speed of the vehicles,
traffic, and the conditions of the highway B
from which an officer may draw inferences and base his opinion that a vehicle
is following too closely. 

Officer Galligan=s
statement was based on only one objective criteria:  an expired inspection sticker.  AThe
essential requirement [for an inference to be drawn] is that mere speculation
be not allowed to do duty for probative facts after making due allowance for
all reasonably possible inferences.@[2]  Here, there was only one inference that could
be drawn if Officer Galligan was believed. 
Officer Galligan=s
observance of the inspection sticker was not speculation.  Officer Galligan=s
failure to remember the dates on the expired inspection sticker or its color
only went to the weight of his testimony.








Based on Officer Galligan=s
testimony, the trial court may have decided that appellant was driving with an
expired inspection sticker despite Morrison=s
testimony.  Morrison did not see the new
inspection sticker placed on appellant=s
car.  The trial court could have
reasonably concluded that the arrest of appellant for the expired inspection
sticker was a legal arrest.[3]  Appellant=s
first point of error is overruled.

                         Warrantless
Arrest Based on Confidential Informant=s
Information

Although our discussion of appellant=s first point of error determines the
outcome of this appeal, we address appellant=s
second point because of the inspection sticker controversy.  In his second point, appellant argues that
the State failed to demonstrate that probable cause existed for his warrantless
arrest based on a confidential informant=s
tip.  Appellant contends that Officer
Galligan arrested him before he consented to the search of his car.  Appellant relies on a number of cases for the
proposition that the confidential informant=s
information was not sufficient to support a finding of probable cause for
appellant=s
arrest.  The facts of this case B a set-up drug buy based on
corroborated information provided by a confidential informant B distinguish it from the cases cited by
appellant.  Appellant cites Serrano v.
State, 123 S.W.3d 53, 60 (Tex. App.CAustin
2003, pet. ref=d); Morris
v. State, 62 S.W.3d 817, 822 (Tex. App.CWaco
2001, no pet.); and Parish v. State, 939 S.W.2d 201, 204 (Tex. App.CAustin 1997, no pet.).  Serrano, Morris, and Parish
all involved the issue of whether the affidavit established probable cause for
the issuance of a search warrant.  They
did not involve drug buys based on information received from confidential
informants.  Appellant also cites Davis
v. State, 989 S.W.2d 859, 864 (Tex. App.CAustin
1999, pet. ref=d).  In Davis,
the court held that an uncorroborated anonymous phone tip did not create
reasonable suspicion to justify an investigative stop.  This case does not involve an anonymous phone
tip.  Appellant also cites Smith v.
State, 58 S.W.3d 784, 792 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d).  In Smith, the court held that, in the
absence of any evidence establishing the confidential informant=s reliability such as Aher track record,@ the State failed to show that
reasonable suspicion for a stop existed. 
Id.
at 790.  In this case, Officer Romano
provided testimony concerning the confidential informant=s
track record.








            Probable cause for a warrantless arrest
exists when the facts and circumstances of which an officer has personal
knowledge or of which he has reasonably trustworthy information are sufficient
to warrant a person of reasonable caution to believe that an offense was or is
being committed. Torres, 182 S.W.3d at 901-02; Amador v. State,
187 S.W.3d 543, 548 (Tex. App.CBeaumont
2006, pet. filed).  An appellate court
must examine the cumulative information known by the arresting officers in
determining whether probable cause existed for the arrest.  Torres, 182 S.W.3d at 902.  Probable cause must be based on facts, not
opinions.  Id.

Appellant=s
argument, under his second point, is again based on his assumption that Officer
Galligan=s Awarrantless arrest@ occurred before appellant gave his
consent to search his car.  Based on the
record, the trial court may have concluded that appellant=s argument under both points of error
was based on a false premise because either there was no arrest by Officer
Galligan or his arrest of appellant occurred after appellant=s written consent to search was given.

Our analysis focuses on the steps leading to
appellant=s arrest
for the cocaine.  As detailed below, the
facts support implicit findings by the trial court that there was reasonable
suspicion for the stop, that there was no arrest of appellant by Officer
Galligan, that appellant gave his voluntary consent to a search of his car,
that the officers found cocaine during the search of the car, and that there
was probable cause for Officer Romano=s
arrest of appellant.  Alternatively, the
facts support implicit findings by the trial court that there was reasonable
suspicion for the stop, that appellant voluntarily consented to the search,
that Officer Galligan then arrested appellant, that the officers found cocaine
during the search of appellant=s
car, and that there was probable cause for Officer Romano=s arrest of appellant.








Circumstances short of probable cause may justify
a temporary detention for the purpose of investigation.  Garza v. State, 771 S.W.2d 549, 558
(Tex. Crim. App. 1989).  A temporary
detention is justified when the detaining officer has specific articulable
facts which, taken together with rational inferences from those facts, lead him
to conclude that the person detained is, has been, or soon will be engaged in
criminal activity.  Woods v. State,
956 S.W.2d 33, 38 (Tex.
Crim. App.  1997).  The articulable facts used by the officer
must create some reasonable suspicion that some activity out of the ordinary is
occurring or has occurred, some suggestion to connect the detainee with the
unusual activity, and some indication that the unusual activity is related to
crime.  Garza, 771 S.W.2d at
558.  A law enforcement officer may rely
on information given to him by another officer. Armendariz v. State, 123
S.W.3d 401, 404 (Tex.
Crim. App. 2003).  An investigative
detention is a seizure under which the citizen is not free to leave, but it
must be reasonable under the Constitutions of the United
 States and Texas.  Terry v. Ohio,
392 U.S. 1 (1968); Johnson
v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995); Hartman v. State,
144 S.W.3d 568, 571 (Tex.
App. B Austin
2004, no pet.).

Officer Romano had worked with the confidential
informant on ten to fifteen previous occasions, and the informant had given him
credible and reliable information leading to the seizure of narcotics.  Officer Romano asked the informant to set up
a meeting with appellant for appellant to deliver six ounces of cocaine to the
informant.  The confidential informant
agreed to set up the meeting and described appellant, his car, when he would be
departing the Saint Germaine Apartments, and where the meeting would be
held.  Officer Romano confirmed all of
the information, except for the six ounces of cocaine, before he radioed
Officer Galligan to stop appellant=s
car.  It is reasonable to infer that
Officer Galligan, as part of the team, was stationed along the route to the
meeting place.  Officer Romano testified
that he called Officer Galligan directly and not through dispatch.  Officer Galligan said that he was in the
church parking lot at the corner of Houston
 Avenue and Washington Street and that his job was to
stop appellant=s
vehicle.

Based on the evidence, the trial court did not
abuse its discretion in implicitly finding that there was reasonable suspicion
to stop appellant=s
car.  Nor did the trial court abuse its
discretion in implicitly finding that the detention here was reasonable.  See Gray, 158 S.W.3d 465.

Was Appellant Arrested, and, if so, When Did
the Arrest Occur?








Appellant asserts that, after the stop, he was
immediately arrested by Officer Galligan.[4]  Although appellant argues that he had already
been the subject of a warrantless arrest by Officer Galligan when he gave his
consent, the testimony was contradictory and confusing on when Officer Galligan
placed appellant under arrest.  Officer
Galligan stated a number of times that he Aarrested@ appellant for an expired inspection
sticker.  But even assuming that he did
in fact Aarrest@ appellant, the first crucial
determination is when did that alleged arrest occur.  Viewing the entire record, the trial court as
finder of fact could have reasonably found that the Aarrest@ occurred after the written consent to
search was given.  Officer Romano
testified that he arrived about three minutes after Officer Galligan stopped
appellant and obtained appellant=s
written consent to search shortly thereafter. 
At the outset of Officer Galligan=s
testimony before he became confused, Officer Galligan was asked if he put
appellant in the back of his patrol car before Officer Romano got to the
scene.  Officer Galligan stated that he
did not.  Officer Romano first testified
that appellant was outside of Officer Galligan=s
patrol car when Officer Romano first spoke with appellant, but later said that
appellant may have been in the back of the patrol car.

At one point, Officer Galligan testified that
appellant was put in the back of the police car after the stop, that he was
under arrest, and that he was not free to leave.  But immediately following that testimony,
Officer Galligan was asked, AWhat
was he under arrest for?@  Officer Galligan replied, AAt that time, he was being detained by
the Narcotics Division.@  Later, appellant=s
counsel asked, A[Appellant]
was under arrest in the backseat of your marked patrol vehicle when Officer
Romano arrived, correct?@  Officer Galligan replied that that was not
correct.  In answer to a subsequent
question, Officer Galligan said that appellant was in the backseat of his
patrol car under arrest when Officer Romano approached him to speak with
him.  There was also testimony that
appellant asked to speak with Officer Romano privately.  The trial court was in a position to view
both officers throughout their testimony and may have concluded that their
initial statements supported a finding that the Aarrest@ did not occur prior to appellant
executing the written consent.








This case is unremarkable except for Officer
Galligan=s
confusion over thinking that he needed a traffic violation to make the stop and
his confusion over what constitutes an arrest versus an investigative
detention.  The objective testimony shows
that he had reasonable suspicion to stop appellant based on the set-up drug buy
with the confidential informant, that the only indicia of arrest is his
statement that he placed appellant under arrest (an expression of his
subjective intent), that there is no evidence that he communicated to appellant
that the latter was under arrest or that appellant knew he was under arrest,
and that the statements about putting appellant in the patrol car are  consistent with an investigative detention or
an arrest.  The subjective intent of law
enforcement officials to arrest is irrelevant unless that intent is somehow
communicated or otherwise manifested to the suspect.  Dowthitt v. State, 931 S.W.2d 244, 254
(Tex. Crim. App. 1996) (citing Stansbury v. California, 511 U.S.
318 (1994)).  Thus, although Officer
Galligan said that appellant was under arrest when Officer Romano first spoke
to appellant, other testimony including various statements by Officer Galligan
indicates that appellant may have only been under investigative detention when
he gave his consent to search.  

During the short time before the written consent
to search was signed, was appellant Aarrested@ by Officer Galligan or was he under an
investigative detention?  Did appellant
believe he was under arrest?  The determination
of custody must be made on an ad hoc basis, after considering all of the
objective circumstances.  Shiflet v.
State, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985).  The difficulty of distinguishing between
investigative detentions and arrests was discussed in Francis v. State,
896 S.W.2d 406 (Tex. App.CHouston
[1st Dist.] 1995, pet. ref=d),
and by Judge Clinton in Francis v. State, 922 S.W.2d 176 (Tex. Crim.
App. 1996) (dissenting from dismissal of the petition for review). As Judge Clinton stated in Francis:

Unlike
an investigative detention, where the seizure may end within a brief period of
time, the seizure involved in an arrest will not be brief.

 

922 S.W.3d at 178.

Officer Romano arrived within three minutes of the
stop and immediately began talking with appellant.  Despite Officer Galligan=s statements that he arrested appellant
for the expired inspection sticker, appellant=s
arrest may be viewed as an investigative detention.  A person is in Acustody@ only if, under the circumstances, a
reasonable person would believe that his freedom of movement was restrained to
the degree associated with a formal arrest. 
Dowthitt, 931 S.W.2d at 254. 


The trial court may have implicitly found that
there was no Aimmediate
warrantless arrest@ prior to
appellant=s written
consent to search his car.  The trial
court could reasonably have viewed the stop of appellant as an investigative
detention, his consent to search as having been freely given, and the
warrantless arrest as having been based on the cocaine found during the
search.  For this additional reason, the
trial court did not abuse its discretion in denying appellant=s motion to suppress.  Appellant=s
second point of error is overruled.

Appellant=s
Written Consent to Search Was Not Tainted








Even assuming an immediate arrest by Officer
Galligan, the trial court could have reasonably found that appellant=s consent to search was not an
exploitation of that arrest.  Appellant
only challenged the written consent to search as an exploitation of Officer
Galligan=s Aillegal arrest@;
he did not otherwise challenge the voluntariness of the consent.  However, a discussion of why we find that
appellant=s written
consent to search his car was freely and voluntarily given is helpful to our
discussion of the exploitation challenge.

At Officer Romano=s
request, appellant signed a written consent to search that stated his
permission was being freely given:

I, David Edward Myers, having been informed of my
constitutional right not to have a search made of my vehicle hereinafter
mentioned without a search warrant and of my right to refuse to consent to such
a search, hereby authorize R.P. Romano and Greg Haselbuler, Police Officers of
the Houston Police Department, to conduct a complete search of my Vehicle (1995
Acura Legend, (Texas CIZDL)[)] located in the 1800 block of Washington
Ave.  These officers are authorized by me
to take from my vehicle any letters, papers, materials, or other property which
they may desire.  This written permission
is being freely given by me to the above named officers voluntarily and without
threats or promises of any kind and it is given with my full and free consent.       /s/ David Edward Myers

 

The written consent was witnessed by Officer Romano and another
drug enforcement agent.  

Officer Romano testified that he made no threats
or promises to appellant when he asked appellant to sign the consent to search
form.  Officer Galligan testified that at
no time did he see Officer Romano act in an aggressive manner and that he saw
appellant sign the consent to search. Officer Galligan also testified that
appellant was cooperative with him and Officer Romano.  Officer Romano testified that appellant read
the written consent form before signing it. 
Appellant also signed a written consent to search his residence.  Appellant gave Officer Romano credible
information that led to the arrest of another person for drugs within
forty-five minutes after Officer Romano arrested appellant for possession of
drugs, indicating that appellant was cooperative the entire time.

 Consent to
search operates as an exception to the Fourth Amendment=s
warrant requirement.  See Schneckloth
v. Bustamonte, 412 U.S.
218, 219 (1973); State v. Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App.
1997).  The consent must be voluntarily
given to be considered effective, and voluntariness is a question of fact to be
determined from the totality of the circumstances.  Carmouche, 10 S.W.3d at 331.  The burden of proof is on the State to show
by clear and convincing evidence that the consent was freely given.  Ibarra, 953 S.W.2d at 245.  The court in Laney v. State, 

76 S.W.3d 524, 532 (Tex. App.CHouston
[14th Dist.] 2002), aff=d,
117 S.W.3d 854 (Tex. Crim. App. 2003), recited the factors to be considered in
determining voluntariness:








[W]hether
the consenting person is in custody, whether he or she was arrested at
gunpoint, and whether the person was informed that he or she did not have to
consent. [citing Carmouche, 10 S.W.3d at 331] Other factors include: the
youth of the accused, the education of the accused, the intelligence of the accused,
the constitutional advice given to the accused, the length of the detention,
the repetitiveness of the questioning, and the use of physical punishment.  Reasor v. State, 12 S.W.3d 813, 818
(Tex.Crim.App. 2000).

 

Even assuming that appellant was in custody when
he signed the consent to search, he was not arrested at gunpoint; he was not in
handcuffs; he was informed that he did not have to consent; and he was
described by the confidential informant as being a forty-year-old white male.  The form that he read and signed states that
he was informed of his constitutional rights. 
The detention was brief before he signed; there was no repetitiveness of
questioning by Officer Romano; and there was no use of physical
punishment.  Assuming there was an arrest
and not an investigative detention, it was for an expired inspection sticker
and not for a serious offense.  There is
no evidence in the record that appellant=s
will was overborne by the Aarrest@ by Officer Galligan.  See Reasor, 12 S.W.3d at 818 (citing Schneckloth).  Looking at the totality of the circumstances,
we hold that the record supports a finding by clear and convincing evidence
that appellant=s consent
to search was free and voluntary regardless of when Officer Galligan=s Aarrest@ occurred.

Assuming
an Invalid Arrest Was Made, Was the Cocaine

 Found an Exploitation of that Arrest?

 

              Brick v. State,
738 S.W.2d 676 (Tex. Crim. App. 1987), sets forth the appropriate method to be
utilized in deciding whether the taint of an illegal incarceration has been
sufficiently purged of its initial contamination to validate the consent to
search and make the discovered evidence admissible.  Boyle v. State, 820 S.W.2d 122, 131-32
(Tex. Crim. App. 1989).  Brick
requires an analysis of the factors set forth in Brown v. Illinois, 422
U.S. 590, 603-04 (1975), and the additional ones suggested by Professor LaFave
in 3 W. LaFave, Search and Seizure:  A Treatise on the Fourth Amendment ' 8.2(d) (3d ed. 1996).








The Brown factors are (1) the giving of Miranda[5]
warnings; (2) the temporal proximity of the arrest and search; (3) the presence
of intervening circumstances; and (4) the purpose and flagrancy of the officers= conduct.  The additional LaFave factors, which
partially overlap, are (5) the proximity of the consent to the arrest; (6)
whether the seizure brought about police observation of the particular object
which they sought consent to search; (7) whether the illegal seizure was
flagrant police misconduct; (8) whether the consent was volunteered rather than
requested by the detaining officers; (9) whether the arrestee was made fully
aware of the fact that he could decline to consent and thus prevent an
immediate search of his car or residence; and (10) whether the police purpose
underlying the illegality was to obtain the consent.








Looking at the factors set forth in Brick,
we find that appellant=s
written consent to search his car was not an exploitation of the assumed
illegal arrest by Officer Galligan.  One
of the cases considered in forming our analysis is Juarez v. State, 758
S.W.2d 772 (Tex. Crim. App. 1988).[6]  Looking at the Brick factors, (1)
there is no evidence that appellant was read his Miranda rights; (2) the
temporal proximity of the arrest and search was less than thirty minutes;[7]
(3) the intervening circumstances consisted of Officer Romano=s approach to talk with appellant and
appellant=s
insistence on speaking privately with Officer Romano; (4) the purpose of
Officer Galligan=s conduct
was simply to stop appellant and detain him until Officer Romano arrived; there
was no flagrancy of conduct by the officers; Officer Galligan did not need a
traffic violation because he could have based his stop and detention upon
reasonable suspicion provided by the set-up drug buy; (5) the proximity of the
consent to the arrest was within thirty minutes; (6) the stop did not bring
about police observation of the particular object they sought consent to
search; the stop was simply a step in the events initiated by the set up of the
drug buy between the confidential informant and appellant, and the officers had
been observing appellant=s
car since he left his apartment; (7) the arrest was not flagrant police
misconduct; the police had the right to an investigative detention of appellant
based on reasonable suspicion; (8) Officer Romano requested the consent, but he
first confirmed information given by the confidential informant that appellant
carried large sums of cash on him; (9) the written consent form made appellant
fully aware of the fact that he could decline to consent and thus prevent an
immediate search of his car; and (10) because an investigative detention was
justified, the police had no reason to arrest appellant for an expired
inspection sticker; hence, the police purpose (Officer Galligan=s) underlying the illegality was not to
obtain the consent. 

Factors 1, 2, 5, and 8 are on the side of
appellant; and factors 3, 4, 6, 7, 9, and 10 are against him.  But the factors should not be considered to
be of equal weight.  See Juarez, 758 S.W.2d at 781 -83.  We find the factors against appellant to be
much stronger than those in his favor. 
The illegality, if any, of Officer Galligan=s
arrest rests alone upon the violation of a traffic statute.  This also influences our assessment of the
purposefulness and flagrancy of the police conduct, especially given the fact
that there was reasonable suspicion for the stop.  See Brick, 738 S.W.2d at 681.  It cannot be said that the six ounces of
cocaine would not have been found but for Officer Galligan=s Aarrest.@

We have discussed reasonable suspicion for the
stop, but the trial court may have found that there was probable cause to stop
and search appellant=s
car.   Probable cause to search exists
when the totality of the circumstances allows a conclusion that there is a fair
probability of finding contraband or evidence at a particular location.  Dixon
v. State, No. PD-1592-05, 2006 WL 1408451, at *2 (Tex. Crim. App. May 24, 2006).  As stated, Officer Romano verified the
informant=s
information before detaining appellant and searching his car.  See, e.g., Draper v. United States,
358 U.S. 307, 309-13 (1959);
Dixon,
2006 WL 1408451.

We note that the totality of the circumstances in
this case are even more favorable to the State than those in Dixon. 
Dixon
did not involve a set-up drug buy, and there was no written consent to
search.  Here, Officer Romano had set up
a purchase of cocaine from appellant with the confidential informant to be the
buyer.  After the stop, Officer Romano
first confirmed that appellant carried large amounts of money just as the
confidential informant had stated.  After
Officer Romano obtained the consent to search, the six ounces of cocaine were
found in appellant=s car
just as the confidential informant had stated.

We hold that appellant=s
written consent to search his car was not an exploitation of the illegal arrest,
if any, by Officer Galligan.

This Court=s
Ruling

The trial court did not abuse its discretion in
denying appellant=s motion
to dismiss.  The judgment of the trial
court is affirmed.

 

September 7, 2006                                                                   TERRY
McCALL

Publish.  See Tex.
R. App. P. 47.2(b).                                    JUSTICE

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











[1]Tex. Transp. Code Ann. ' 545.062(a) (Vernon
1999) provides:

 

An operator shall, if following another vehicle, maintain an assured
clear distance between the two vehicles so that, considering the speed of the
vehicles, traffic, and the conditions of the highway, the operator can safely
stop without colliding with the preceding vehicle or veering into another
vehicle, object, or person on or near the highway.





[2]Ruggero J. Aldisert, Logic For
Lawyers:  A Guide To Clear Legal Thinking 27 (NITA 3d ed. 1997) (citing Tose v. First Pa.
Bank, N.A., 648 F.2d 879, 885 (3rd Cir. 1981) (quoting Galloway v.
United States, 319 U.S.
372, 395 (1943))).





[3]Officer Galligan could have conducted a search of
appellant=s vehicle incident to the arrest.  See Williams v. State, 726 S.W.2d 99,
99-101 (Tex. Crim. App. 1986).





[4]Appellant cites Burkes v. State, 830 S.W.2d 922,
925 (Tex. Crim. App. 1991); McCraw v. State, 117 S.W.3d 47, 53-54 (Tex.
App.CFort Worth 2003, pet. ref=d); and Moore
v. State, 55 S.W.3d 652, 659 (Tex.
App.CSan Antonio 2001, no pet.), in support of the
contention that Officer Galligan immediately arrested him.  However, each of these cases are
distinguishable from the present case. 
In Burkes, the Court of Criminal Appeals held that an officer=s handcuffing of the defendant and placing him on the
ground constituted an arrest, not a mere detention.  In McCraw, the court held that the
officers= conduct of blocking the defendant=s vehicle in a driveway, ordering the defendant out of
the vehicle at gunpoint, and directing the defendant to step to the rear of his
vehicle constituted an arrest, not an investigative detention.  In this case, Officer Galligan merely placed
appellant into the backseat of his patrol car for the expired inspection
sticker.  Thus, the facts in this case
are distinguishable from the facts in Burkes and McCraw.  In Moore,
the court held that an officer=s stop of the defendant constituted an arrest, as
opposed to an investigative detention, where the officer did not perform any
investigation before having the suspect transported to jail.  Here, Officer Galligan performed an
investigation, and the officers did not take appellant to the police station or
jail as a result of Officer Galligan=s Aarrest@ for the expired inspection sticker.  Officer Galligan said that he verified the
expired inspection sticker and took appellant=s driver=s license to his patrol car to verify it.  Officer Galligan believed that he gave
appellant=s driver=s license to Officer Romano.





[5]Miranda v. Arizona, 384 U.S.
436 (1966).





[6]Although the statement in Juarez, 758 S.W.2d at
780 that Awe do not consider [the Brown] factors
absolutely controlling in consent to search following an illegal arrest or
detention cases@ was rejected in Boyle, 820 S.W.2d at 132 n.10
(the factors must be considered), the analysis in Juarez remains
persuasive.





[7]Appellant argues that this factor falls on his side of
the ledger because his consent followed Ahard on
the heels@ of his illegal detention, citing Howe v. State,
874 S.W.2d 895, 902 (Tex. App.CAustin 1994, no pet.). 
In Howe, there was no reasonable suspicion for detaining the
defendant.  Also, the totality of the
circumstances in Howe is not remotely similar to the totality of the
circumstances here.  The temporal
relationship may be an ambiguous factor, and it is not a strong determining
factor by itself.  See  Juarez, 758 S.W.2d at 781; Bell v. State,
724 S.W.2d 780, 788 (Tex. Crim. App. 1986).