In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00178-CR


______________________________




EDWARD FABIO HERRERA, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 337th Judicial District Court


Harris County, Texas


Trial Court No. 851496




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Ross


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 Edward Fabio Herrera appeals his jury conviction and assessment of twenty years'
imprisonment for possession of a controlled substance with intent to deliver. Herrera
contends the trial court erred by abusing its discretion in denying his motion to suppress
evidence. 

 We review the denial of a motion to suppress by giving almost total deference to a
trial court's determination of historical facts, and we review de novo the court's application
of the law. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). When the
trial court does not make explicit findings of historical fact, we review the evidence in the
light most favorable to the trial court's ruling. Id. at 327-28. In determining whether a trial
court's decision is supported by the record, we generally consider only evidence adduced
at the suppression hearing, because the ruling was based on that evidence, rather than
evidence introduced later at trial. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996).

 Houston police officers stopped Herrera for a traffic violation. While Herrera was
stopped, the officers obtained written permission from him to search his vehicle and his
apartment. The police found cocaine in Herrera's apartment. There is no dispute the
traffic stop was a pretext for furthering a narcotics investigation. Officer Dale Crawford was 
in an unmarked car, and while maintaining surveillance on Herrera, notified Officers O. X.
Pena and Fernando Villasana that Herrera was leaving a nightclub. Pena and Villasana
requested Crawford stop Herrera for a traffic violation if possible, and if not, to follow him
to the apartment. Crawford observed Herrera commit a traffic violation (failure to maintain
a single lane) and called Officer Bryan Garrison, who was in a marked patrol unit, to stop
Herrera's vehicle. Garrison testified he did not witness any traffic violations by Herrera, but
stopped Herrera solely at Crawford's request. On stopping Herrera, Garrison ascertained
that he did not speak the English language. Garrison therefore called for a Spanish-speaking officer to come to the scene. Herrera gave Garrison his valid Texas driver's
license. Garrison ran a background check on the license number, which returned with no
outstanding warrants for Herrera's arrest. Garrison first testified he could not remember
if the background check came back before the Spanish-speaking officers arrived, but then
testified he had completed the check when the officers arrived. Garrison testified he could
not have written Herrera a citation because he did not witness the infraction. Crawford
testified he arrived at the scene shortly after Garrison stopped Herrera, but he never gave
Herrera a citation, and he had little interaction with Garrison. Crawford further testified that
Garrison told him Herrera did not speak the English language, and that he, Crawford, then
radioed Pena and Villasana, who said they were on their way.

 Villasana testified that, on his arrival at the scene, he immediately introduced himself
to Herrera as a narcotics officer and told him they were investigating narcotics, and that he
wanted his (Herrera's) consent to search his car and apartment. Villasana further testified
he did not talk with Herrera about any other law enforcement problems; he only wanted to
get the consent to search. The State produced no evidence at the hearing that the
Spanish-speaking officers helped further the investigation of the initial stop in any way. 
The evidence conclusively proves the sole purpose for Villasana's presence at the scene
was to obtain written consent to search Herrera's vehicle and apartment.

 Herrera does not contest the validity of the traffic stop. Rather, he challenges the
duration of the stop. He contends the duration of the stop exceeded the time required for
the stop, and because the written consent was granted beyond the time necessary for the
stop for the traffic violation, his due process rights were violated. The question is whether
the written consent was granted during the detention for the traffic stop, or if it occurred
outside this time.

 A routine traffic stop is a detention and thus must be reasonable under the United
States and Texas Constitutions. See Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim.
App. 1997). Two factors determine the reasonableness of an investigative detention: 
1) whether the officer's action was justified at its inception; and 2) whether it was
reasonably related in scope to the circumstances which justified the interference in the first
place. Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Davis, 947
S.W.2d at 242. To be reasonable, a traffic stop must be temporary and last no longer than
is necessary to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500,
103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Davis, 947 S.W.2d at 245. However, once the
reason for the stop has been satisfied, the stop may not be used as a fishing expedition
for unrelated criminal activity. Davis, 947 S.W.2d at 243; see Ohio v. Robinette, 519 U.S.
33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (Ginsburg, J., concurring). The
investigative methods employed should be the least intrusive means reasonably available
to verify or dispel the officer's suspicion in a short period of time. Davis, 947 S.W.2d at
245, citing Perez v. State, 818 S.W.2d 512, 517 (Tex. App.-Houston [1st Dist.] 1991, no
pet.). If the detention becomes prolonged, it can no longer be considered an investigative
stop; but there is no rigid time limitation on the permissible length of an investigative stop. 
The propriety of the stop's duration is judged by assessing whether the police diligently
pursued a means of investigation that was likely to quickly dispel or confirm their
suspicions. United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605
(1985). Any continued detention must be based on articulable facts which, taken together
with rational inferences from those facts, would warrant a person of reasonable caution in
the belief that a continued detention was justified, i.e., the detainee was or would soon be
engaged in criminal activity. Davis, 947 S.W.2d at 244-45. In other words, once the
purpose of the original detention has been effectuated, any continued detention must be
supported by some additional reasonable suspicion, that is, something out of the ordinary
is occurring and there is some indication the unusual circumstance is related to a crime. 
See Davis, 947 S.W.2d at 244-45. A detention which is not temporary and reasonably
related in scope to the circumstances which justified the interference is unreasonable and
violates the Fourth Amendment. Davis, 947 S.W.2d at 243. 

 In this case, Herrera was stopped for a traffic violation. However, Villasana testified
that his sole purpose was to get consent to search Herrera's vehicle and apartment, and
that he did not help further the investigation of the traffic stop. By the time Villasana
arrived, the background check was complete, and the testimony from both Garrison and
Crawford was that the only reason to further detain Herrera was to wait for the Spanish-speaking officers. The facts in this case reveal Villasana did not help further investigate
or help effectuate the purpose of the stop; he only wanted to obtain consent to search
Herrera's apartment and vehicle. Although the evidence clearly shows it took Villasana no
more than five to seven minutes to arrive, his admitted purpose was not to assist in
effectuating the stop, and Garrison's testimony reveals that, by the time Villasana arrived,
the background check was complete and the officers were merely waiting for a Spanish-speaking officer to arrive.

 We must determine if the purpose of the initial detention had been satisfied by the
time Villasana arrived. In Davis, the police validly stopped Davis on suspicion of drunk
driving, but having determined Davis was not drunk and did not have any outstanding
warrants, the police detained him, without reasonable suspicion or probable cause, until
the canine unit arrived. Davis, 947 S.W.2d at 241, 246. "[T]he validity of an arrest or stop
should be determined solely by analyzing objectively the facts surrounding the event." 
Garcia v. State, 827 S.W.2d 937, 943 (Tex. Crim. App. 1992). In Daly, the court held
Daly's due process rights were violated when he was detained unlawfully after being issued
a warning on his traffic stop, because no suspicious behavior or incriminating
circumstances arose during the stop to justify the continued detention. State v. Daly, 35
S.W.3d 237, 241-243 (Tex. App.-Austin 2000, no pet.). In McQuarters, the court held
detaining McQuarters after the issuance of a warning in order to wait for the canine unit,
without evidence showing reasonable suspicion, made the continued detention
unreasonable and required the suppression of the evidence. McQuarters v. State, 58
S.W.3d 250, 256-257 (Tex. App.-Fort Worth 2001, pet. ref'd).

 We hold, based on the facts in this case, the police did not diligently pursue a
means of investigation that was likely to quickly dispel or confirm their suspicions regarding
the initial stop. The State did not present any evidence at the hearing on the motion to
suppress that Crawford, the officer who witnessed the traffic violation, made any effort to
investigate the initial stop. He radioed the narcotics officers to let them know Herrera did
not speak the English language, but the evidence shows that he made no attempt to cite
Herrera for failing to maintain a single lane or that he communicated with the Spanish-speaking officers at all regarding the stop. The testimony reveals the only purpose for
delaying Herrera beyond the background check was to wait for Spanish-speaking officers
to arrive. However, after Herrera's background check showed no outstanding warrants for
his arrest, no further actions were taken regarding the stop for the traffic violation. 

 In order to further detain Herrera beyond the initial stop, the State needed to
produce evidence of articulable facts showing the officers' reasonable suspicions of illegal
activity. The State presented no evidence regarding Herrera's behavior that created
reasonable suspicion Herrera was engaged in illegal activity, or soon would be engaged
in illegal activity. The State presented no evidence to warrant detaining Herrera beyond
the time needed to effectuate the initial stop. We hold Herrera was detained beyond the
time needed to investigate the traffic violation, and because no evidence was presented
showing reasonable suspicion to further detain Herrera beyond the initial stop, Herrera's
Fourth Amendment rights were violated.

 Herrera's unlawful detention, by itself, does not prohibit the State from using the
evidence seized. See Juarez v. State, 758 S.W.2d 772, 779-80 (Tex. Crim. App. 1988). 
We must determine whether the State satisfied its burden to prove by clear and convincing
evidence that Herrera voluntarily consented, and that his consent was sufficiently purged
of its contamination from the unlawful detention so as to validate his consent and thereby
make the discovered evidence admissible. 

 When determining whether the State satisfied its burden, we must consider the
following factors: 1) proximity of the consent to the arrest; 2) whether the seizure brought
about police observation of the particular object which they sought consent to search;
3) whether the illegal seizure was "flagrant police misconduct"; 4) whether the consent was
volunteered rather than requested by the detaining officers; 5) whether the arrestee was
made fully aware of the fact he could decline to consent and thus prevent an immediate
search of the car or residence; and 6) whether the police purpose underlying the illegality
was to obtain the consent. Boyle v. State, 820 S.W.2d 122, 132 (Tex. Crim. App. 1989). 

 Although Herrera was detained by the police, he was never warned of his Miranda (1)
rights. Herrera granted consent to search shortly after the unlawful detention began, and
there are no intervening factors that separate the unlawful detention from the granting of
consent. There was no significant intervening circumstance which would allow this Court
to indulge in an inference that the taint of the illegal arrest was purged. See Boyle, 820
S.W.2d at 132. As a result of unlawfully detaining Herrera, the police were able to obtain
the consensual search and retrieve the incriminating evidence which they had hoped to
find in his apartment. Thus, the illegal detention "brought about [the] police observation
of the particular object which they sought consent to search." Brick v. State, 738 S.W.2d
676, 680 (Tex. Crim. App. 1987). Because the search flows directly from the appellant's
arrest, these circumstances militate strongly against the attenuation of the taint. Boyle,
820 S.W.2d at 132. 

 The police misconduct in this case was the extension of a lawful investigative
detention beyond the scope justified by the information in the police officers' possession. 
When the officers kept Herrera beyond the background check, their purpose was to obtain
Herrera's consent to search his vehicle and apartment. While unlawful, we do not consider
this misconduct to be purposefully flagrant. The State produced no evidence at the
hearing that Herrera was made fully aware of the fact he could decline to consent and thus
prevent an immediate search of the car or residence. With regard to the final factor,
Villasana testified the only purpose for his being at the scene was to obtain written consent
to search the vehicle and apartment. Crawford only had Herrera stopped for the traffic
violation because Pena and Villasana told him, if he could stop Herrera on a traffic stop,
to please do so. Although pretextual traffic stops are constitutional, the sole purpose for
this stop was to obtain consent, and the sole purpose for detaining Herrera beyond the
time necessary to investigate the purpose for the initial stop was to obtain consent to
search Herrera's vehicle and apartment. The uncontroverted evidence shows that the
police requested consent to search and that Herrera granted consent to search. 

 Considering all the foregoing factors, we conclude the State has failed to meet its
burden of proof and did not demonstrate by clear and convincing evidence there were
sufficient intervening events between the illegal arrest and the consensual search to break
the causal connection so that the consent to search was indeed purged of its primary taint.

We hold that Herrera's Fourth Amendment rights were violated and that the trial court erred
in denying his motion to suppress. Having determined the trial court erred, we now analyze
under Rule 44.2(a) whether the error was harmful. Tex. R. App. P. 44.2(a). Because the
evidence sought to be suppressed was the cocaine found in Herrera's apartment as a
result of the tainted consent, and because the jury convicted Herrera of possession of a
controlled substance with intent to deliver, we hold the trial court's erroneous denial of the
motion to suppress was harmful error.

 We reverse the judgment and remand for further proceedings consistent with this
opinion.



 Donald R. Ross

 Justice


Date Submitted: May 31, 2002

Date Decided: June 25, 2002


Publish



 


 

 

 
1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).