NUMBER
13-09-00594-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

DONALD METOYER,                                      Appellant,

 

v.

 

THE STATE OF TEXAS,                                   
Appellee.

                                                                     


 

On appeal from the 319th
District Court

of Nueces County,
Texas.

                                                          
           

 

MEMORANDUM OPINION

 

        Before
Chief Justice Valdez and Justices Rodriguez and Benavides

                      Memorandum
Opinion by Justice Benavides

 

Appellant,
Donald Metoyer, pleaded guilty to one count of possession of a firearm by a
felon, a third-degree felony; one count of theft of a firearm, a state jail
felony; and one count of theft, a state jail felony.  See Tex. Penal Code Ann. §§ 46.04,
31.03 (West 2010 & Supp. 2010).  He was sentenced by the court to three
years’ confinement in the Texas Department of Criminal Justice—Institutional
Division for the charge of possession of a firearm by a felon and nine months’
confinement in the Texas Department of Criminal Justice—State Jail Division for
the two theft counts combined, with the sentences ordered to run consecutively. 
In two issues, Metoyer contends that the trial court erred in failing to grant
his motion to suppress because:  (1) he was illegally detained by police; and
(2) his consent to search his car was tainted by the illegal detention.  We
affirm.

I.     
Background

 

            Before
entering his guilty plea in this case, Metoyer sought to suppress the evidence
implicating him in all three charged offenses.  At a hearing on the motion to
suppress, the State called Officer Roger Parker of the Corpus Christi Police
Department who testified concerning the events leading up to Metoyer’s arrest. 
By Officer Parker’s account, on April 27, 2009, the police received an
anonymous tip through the Crime Stoppers “Save Our Streets” program that there
was a stolen gun and a stolen laptop in a white Ford Mustang that belonged to
Metoyer and that was parked in an apartment complex in Corpus Christi.  Officer
Parker testified that when he received the tip, he was already in the area
“working a whole separate tip,” and because he was not sure how many white
Mustangs would be in the complex, he called additional units to help him locate
the vehicle in the complex.  

After
Officer Parker and the other officers drove through the entire complex, they
had found only one white Mustang.  Officer Parker testified that his intention
was to “get a license plate and see if maybe [Metoyer was] living there and
[he] could talk to him at his front door the next day or something like that.” 
Officer Parker testified that when he returned to drive by the Mustang for a
second time, however, all of the doors and trunk of the car were open, and
Metoyer was standing on the passenger side of the vehicle loading bags into the
trunk of the car.  Officer Parker testified that at that time, he was concerned
that Metoyer may have been stealing from other cars in the parking lot because
he was “walking in between vehicles, back and forth” and loading several bags
into the Mustang.  Officer Parker testified:

That’s what kind of alerted me. 
Regardless [of] whether it was from the information of the tip or not[,] it was
the activities that he was doing before, that’s why I actually stopped, to see
exactly what he was loading up. . . .  [T]hat he was loading up
just unknown bags into the vehicle at 11 o’clock at night.

  

Officer
Parker notified the other officers on the scene that he was going to make
contact, and with his hand on his weapon, he approached Metoyer, displayed his
badge, and identified himself as a police officer.  According to Officer
Parker’s testimony, it was then that he “immediately noticed in plain view
inside the trunk the gun case.”  Officer Parker asked Metoyer what he was
loading into the vehicle to which Metoyer replied that he was loading
phonebooks in order to deliver them around the apartment complex.  Officer
Parker asked Metoyer if he would consent to a search of his trunk, to which
Metoyer agreed.  At that time, Officer Parker could “plainly see the gun case
better, and [he] also saw lap-top [sic] computers . . . in
there.”  Officer Parker’s testimony additionally indicated that he saw several
GPS systems in the trunk of Metoyer’s vehicle.  Officer Parker testified that
after asking for additional consent to search the front of the vehicle, Metoyer
simply told him that “the gun [was] in the front of the vehicle.”  Before
searching the front of the vehicle, Officer Parker walked around the car and
noted that he “could see the handle of the gun sticking out from underneath the
front seat.”  He testified that the gun was in “plain view.”  When asked where
he obtained the gun and the laptops, Metoyer told the officer that he found
them in or near a dumpster in the complex.  With the gun, however, Officer
Parker found a registration receipt indicating the owner of the gun, and when
that name was run through the police system, Officer Parker determined that the
owner had reported a burglary in which the gun and a laptop had been stolen.

In
his motion to suppress, Metoyer argued that his Fourth Amendment rights were
violated during his detention and Officer Parker’s search of his vehicle. 
After hearing the foregoing testimony and arguments from counsel, the trial
court denied the motion to suppress evidence but did not issue any findings of
fact or conclusions of law.  Metoyer then entered into a plea agreement with
the State in which he pled guilty subject to the condition that he be permitted
to appeal the denial of his motion to suppress.  This appeal followed.  

II.    Standard of
Review and Applicable Law

 

Our
review of a trial court’s ruling on a pretrial motion to suppress evidence is
well established law:

The appellate courts, including this
Court, should afford almost total deference to a trial court's determination of
the historical facts that the record supports especially when the trial court's
fact findings are based on an evaluation of credibility and demeanor.  The
appellate court should afford the same amount of deference to trial courts’
rulings on “application of law to fact questions,” also known as “mixed
questions of law and fact,” if the resolution of those ultimate questions turns
on an evaluation of credibility and demeanor.  The appellate courts may review
de novo “mixed questions of law and fact” not falling within this category.

 

State v.
Elias, No.
PD-0735-10, 2011 Tex. Crim. App. LEXIS 448 at **14-15 (Tex. Crim. App. April 6,
2011) (citing State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  

Additionally,
in order to challenge a search or seizure under the Fourth Amendment, a
defendant must prove that he had a legitimate possessory interest or
expectation of privacy in the vehicle that he claims was illegally searched,
and “because standing is an element of a Fourth Amendment claim, the State may
raise the issue of standing for the first time on appeal.”  See Kothe v.
State, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004); Hughes v. State, 24
S.W.3d 833, 838 (Tex. Crim. App. 2000).  We review the defendant’s standing de
novo.  Kothe, 152 S.W.3d at 59.    

Three
distinct categories exist to describe the interactions between police officers
and citizens:  (1) encounters, (2) investigative detentions, and (3) arrests.  

In determining
which category an interaction falls into, courts look at the totality of the
circumstances.  An encounter is a consensual interaction which the citizen is
free to terminate at any time.  Unlike an investigative detention and an
arrest, an encounter is not considered a seizure that would trigger Fourth
Amendment protection.  An encounter takes place when an officer approaches a
citizen in a public place to ask questions, and the citizen is willing to
listen and voluntarily answers.  On the other hand, an investigative detention
occurs when a person yields to the police officer's show of authority under a
reasonable belief that he is not free to leave.  When the court is conducting
its determination of whether the interaction constituted an encounter or a
detention, the court focuses on whether the officer conveyed a message that
compliance with the officer's request was required.  The question is whether a
reasonable person in the citizen's position would have felt free to decline the
officer's requests or otherwise terminate the encounter.

 

Crain v.
State, 315 S.W.3d 43,
49 (Tex. Crim. App. 2010) (internal citations omitted).  The type of police
action that exemplifies the projection of authority required to raise the
interaction with a citizen to the level of detention can include “the
threatening presence of several officers, the display of a weapon by an
officer, some physical touching of the person of the citizen, or the use of
language or tone of voice indicating that compliance with the officer's request
might be compelled.”  U.S. v. Mendenhall, 446 U.S. 544, 554, (1980).

The
United States Supreme Court has determined that “[u]nder the Fourth Amendment,
a warrantless detention of a suspect that amounts to less than a full-blown
custodial arrest must be justified at least by a reasonable suspicion.”  Id.
(citing United States v. Sokolow, 490 U.S. 1, 7 (1989) (“[P]olice can
stop and briefly detain a person for investigative purposes if the officer has
a reasonable suspicion supported by articulable facts that criminal activity
may be afoot, even if the officer lacks probable cause.”); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).  “A police officer has reasonable
suspicion to detain a person if he has specific, articulable facts that,
combined with rational inferences from those facts, would lead him reasonably
to conclude that the person detained is, has been, or soon will be engaged in
criminal activity.”  Id. (citing Sokolow, 490 U.S. at 7; Crain
v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010)); see also Terry
v. Ohio, 392 U.S. 1, 21 (1968) (noting that “the police officer must be
able to point to specific and articulable facts which, if taken together with
rational inferences from those facts, reasonably warrant" an investigative
detention).  In determining whether reasonable suspicion exists, a court must
look for any objective justification for the detention and must disregard the
actual subjective intent or motive of the detaining officer.  See Terry,
392 U.S. at 21-22 (“[I]t is imperative that the facts be judged against an
objective standard:  would the facts available to the officer at the moment of
the seizure . . . warrant a man of reasonable caution in
the belief that the action taken was appropriate.”) (internal quotation marks
omitted); see also Wiede v. State, 214 S.W.3d 17, 25 (Tex. Crim. App.
2007) (providing that, in considering the legitimacy of a detention, “[t]he
subjective intent or motivations of law enforcement officials is not taken into
account”).

III.   Discussion

 

A. 
Standing

            The
State contends at the outset that Metoyer did not establish his standing to
question the detention or the search.  We disagree.  “Although we defer to the
trial court’s factual findings and view them in the light most favorable to the
prevailing party, we review the legal issue of standing de novo.”  Kothe,
152 S.W.3d at 59.  In this case, the State does not contend that Metoyer did
not in fact have a possessory interest in the vehicle, only that he did not
meet his burden of showing his possessory interest as a matter of law. 
Although Metoyer presented no witnesses at the hearing on the motion to
suppress, Officer Parker’s testimony was sufficient to establish Metoyer’s
standing to complain of the detention and the search.  Officer Parker testified
that he received a tip that a white Mustang “belonging to Metoyer” contained
stolen property, and additionally, he testified that he eventually ran the
license plates on the Mustang and found that Metoyer owned the vehicle. 
Without rebutting evidence from the State, this is sufficient evidence to
establish Metoyer’s possessory right to the vehicle and, therefore, to
establish his standing to question the legality of the search.  See Hughes
v. State, 24 S.W.3d at 838.

            Regardless,
the fact that Metoyer is challenging the detention that occurred prior to the
search is enough to transcend any question of his expectation of privacy in the
vehicle because Metoyer alleges that it was the improper detention that led to
the discovery of the evidence that he now seeks to suppress.  See id. at
60-61 (holding that, although a defendant has no “standing to complain about
any search and seizure conducted against [a third party], that issue is
transcended by the illegal detention that was found to have occurred earlier”
and affirming the suppression of evidence found in a place where the defendant
clearly had no expectation of privacy); see also State v. Brady, 763
S.W.2d 38, 42 (Tex. App.–Corpus Christi 1988, no pet.) (addressing the
issue of defendant's standing to challenge search although not raised by either
State or defendant in trial or appellate court).  Accordingly, we hold
that Metoyer does have standing to seek the suppression of the evidence
collected in his vehicle.

B.  Encounter vs. Detention

 

            The
State additionally contends that the officers could not have illegally detained
Metoyer because he was not subject to a detention at all, but merely a police
encounter.  Again, we disagree.  The trial court did not enter findings of fact
regarding this interaction, and therefore, we review it as a mixed question of
fact and law subject to de novo review.  See Elias, 2011 Tex.
Crim. App. LEXIS 448, at *15.  In this case, Officer Parker testified that he
displayed his badge to Metoyer and approached him with his hand on his weapon. 
Additionally, the testimony indicated that the other officers “pulled up and
walked up behind [Officer Parker] while [he] started talking to [Metoyer].” 
When considering the totality of the circumstances, we conclude that a
reasonable person in Metoyer’s position would not have felt free to decline the
officer's requests or otherwise terminate the encounter.  See Crain, 315
S.W.3d at 49; Mendenhall, 446 U.S. at 554 (noting, specifically, that
“the threatening presence of several officers” and “the display of a weapon by
an officer” can cause a mere encounter to effectively become a detention). 
Metoyer was indeed detained by the police officers from the moment the
interaction began, and therefore, the legality of the detention is subject to
Fourth Amendment analysis.  See Crain, 315 S.W.3d at 49.

C. 
Reasonable Suspicion

            Both
of Metoyer’s issues on appeal are dependent on a holding by this Court that his
detention was improper under the Fourth Amendment—or more specifically, that
the officers who questioned him and obtained his consent to search his vehicle
did not have reasonable suspicion for such a detention.

            In
his first issue, Metoyer argues that there were no facts available to the
officer at the time of the detention to corroborate the anonymous tip that he
received through the Crime Stoppers program and that an anonymous tip cannot alone
be the basis of an investigative detention.  See State v. Griffey,
241 S.W.3d 700, 704 (Tex. App.–Austin 2007, pet. ref’d).  It is true that an
anonymous tip will rarely establish the required level of suspicion necessary
to justify an investigative detention, but when sufficiently corroborated, it
may be relied upon.  See Alabama v. White, 496 U.S. 325, 330 (1990)
(holding that an anonymous tip was sufficient to establish reasonable suspicion
when the tip gave identifying characteristics of the vehicle, gave its
location, and indicated the route it would take when leaving that location).  Although
there was some corroboration in this case—including observations that there was
in fact a white Mustang parked at the given address and that a gun case was viewed
in plain sight in the trunk of Metoyer’s vehicle—a completely independent basis
for reasonable suspicion existed due to Metoyer’s “shuffling back and forth”
between cars and, as it appeared to Officer Parker, removing property from one
vehicle and putting it into the trunk of the white Mustang.  This observation,
along with the time of day and the number of recent thefts in the area, was
enough to justify an investigative detention in order to ensure that Metoyer
was not, at that very moment, burglarizing another vehicle.  Crain, 315
S.W.3d at 48 (noting that we will “view the evidence in the light most
favorable to the trial court's ruling” and “sustain the trial court's decision
if it concludes that the decision is correct on any theory of law applicable to
the case”).  Officer Parker noted, “At that time I was more concerned about
what he was doing coming from the other vehicles and what property he was
bringing from the other vehicles at 11 o’clock at night.  And at that time I
was detaining him for the purpose of that investigation.”  These clearly
articulable facts, when combined with rational inferences and the anonymous tip
implicating a white Mustang at that exact address, would lead an officer to
conclude that Metoyer actually was, had been, or soon would be engaged in
criminal activity.  See id. at 50.  Though the property being loaded was
not in fact stolen or being removed from another vehicle at all, we must look
only at the facts available to the officer at the time of the detention.  Id.
(citing Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997)). 
Based on an objective standard and the totality of the circumstances in this
case, we conclude that reasonable suspicion existed for the officers to detain
Metoyer.  See Terry, 392 U.S. at 21-22.  Therefore, we overrule
Metoyer’s first issue.

D.  Consent

 

By
his second issue, Metoyer contends that the consent he gave to Officer Parker
to search both his trunk and the passenger compartment of his vehicle was
tainted by his illegal detention.  Having already held that reasonable
suspicion existed for the investigative detention in this case, the detention
was not illegal and, therefore, could not have tainted any consent given by
Metoyer.  See Brick v. State, 738 S.W.2d 676, 681 (Tex. Crim. App.
1987) (listing the factors to show the voluntariness of consent, but noting
that these apply only to “the detention, if unlawful” (emphasis added));
see also Brown v. Illinois, 422 U.S. 590, 603-04 (1975) (same). 
Accordingly, Metoyer’s second issue is overruled.

IV. 
Conclusion

 

            Having
overruled both of Metoyer’s issues on appeal, we affirm the trial court’s
judgment.  

 

________________________

GINA
M. BENAVIDES,

Justice

 

Do not publish.

Tex. R. App.
P.47.2 (b).

 

Delivered and filed the

2nd day of June, 2011.