Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# OPINION

No. 04-10-00744-CR

Marcos **TURRUBIATE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 317830
Honorable George H. Godwin, Judge Presiding[1]

Opinion by:     Sandee Bryan Marion, Justice
Dissenting Opinion by: Steven C. Hilbig, Justice

Sitting:         Karen Angelini, Justice
                 Sandee Bryan Marion, Justice
                 Steven C. Hilbig, Justice

Delivered and Filed:  February 15, 2012

REVERSED AND REMANDED

        In an opinion and judgment dated November 9, 2011, we reversed the trial court's order

on appellant's motion to suppress and remanded the cause to the trial court for further

proceedings.  The State of Texas filed a motion for rehearing and appellant filed a response.  We

deny the State's motion; however, for the purpose of expanding upon our discussion of waiver,

---

[1] The Honorable Liza Rodriguez is the presiding judge of County Court at Law No. 8.  However, the Honorable Karen Crouch presided over the pretrial motion to suppress hearing, and the Honorable George H. Godwin, visiting judge, presided over the guilt/innocence phase of the trial and signed the final judgment.

we withdraw our opinion and judgment of November 9, 2011, and issue this opinion and judgment in its place. Appellant was charged by information with possession of marijuana in an amount more than two ounces and less than four ounces. Before trial, appellant moved to suppress the marijuana, arguing it was the fruit of an illegal warrantless search. The trial court conducted a hearing on the motion, and at the conclusion of the hearing, the trial judge stated she would take the motion to suppress under consideration and make a ruling by the end of June 2010. However, the record before this court does not contain evidence of an express ruling on the motion to suppress. Appellant's case went to trial, and the trial court admitted the confiscated marijuana as State's Exhibit Number 2.

A jury convicted appellant, Marcos Turrubiate, of possession of marijuana in an amount more than two ounces and less than four ounces. The trial court sentenced appellant to one year of adult probation and assessed a $400 fine plus costs of prosecution in the amount of $1502.83. On appeal, appellant argues the trial court erred by denying a pretrial motion to suppress. We agree, and we reverse and remand.

## WAIVER

On appeal and on rehearing, the State contends that because the record before this court does not contain the trial court's ruling on the motion to suppress, appellant waived his argument by failing to preserve it for appellate review and this court may not find an implied ruling. In his response to the State's motion for rehearing, appellant noted that, nine days after the suppression hearing, the trial judge sent a letter to the parties stating she was denying the motion to suppress.

At the end of the May 6, 2010 suppression hearing, the trial court stated it would take the matter under advisement and informed the parties "I will send you a letter. In the meantime, Mr. Valdes [defense counsel], we will set this matter for trial at the end of June, and I will make a

ruling between now and then." The docket entry for June 14, 2010 reads: "Deny MTS KAC – letters mailed by TISH." The letter, dated June 15, 2010, states: "Please be advised that I am denying the Motion to Suppress that was heard on May 6, 2010, in reference to the above numbered and styled cause." The letter is addressed to both defense counsel and the Assistant Criminal District Attorney. We conclude appellant's challenge to the denial of his motion to suppress is preserved for our review.

## MOTION TO SUPPRESS

In his first issue, appellant argues the trial court erred by denying his motion to suppress.

### A.     Standard of Review

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010). First, we apply an abuse of discretion standard to the trial court's findings of fact. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). When the trial court does not issue findings of fact, as in this case, we imply findings that support the trial court's ruling if the evidence (viewed in the light most favorable to the ruling) supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We afford almost total deference to the trial court's implied findings, especially those based on an evaluation of the witnesses' credibility and demeanor. *Valtierra*, 310 S.W.3d at 447. Second, we review de novo the trial court's application of the law to the facts, and we will affirm the ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* at 447–48.

### B.     Law Applicable to Warrantless Searches

A warrantless search of a residence is presumptively unreasonable. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). When a defendant attempts to suppress evidence

based on a warrantless search or seizure, the State has the burden of showing both: (1) probable cause existed at the time the search was made, *and* (2) exigent circumstances requiring immediate entry made obtaining a warrant impracticable. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991). Probable cause to search exists where "reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Id.* If probable cause exists, exigent circumstances may require immediate, warrantless entry by police officers who are: "(1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; [or] (3) preventing the destruction of evidence or contraband." *Gutierrez*, 221 S.W.3d at 685.

When the police cite possible destruction of evidence as an exigent circumstance, the State must demonstrate the police "could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant." *McNairy*, 835 S.W.2d at 107. Courts should consider five circumstances that are relevant to a reasonable determination that evidence might be destroyed or removed:[2]

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant . . . ; (2) reasonable belief that the contraband is about to be removed . . . ; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought . . . ; (4) information indicating the possessors of the contraband are aware that the police are on their trail . . . ; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

---

[2] We disagree with the dissent's conclusion that the first and third factors no longer apply after the U.S. Supreme Court's decision in *Kentucky v. King*, 131 S. Ct. 1849 (2011). The dissent's interpretation and application of *King* swallows whole the exigent circumstances exception. Under the dissent's view, probable cause to believe drugs are inside a home—without more—allows a warrantless search of the home because, following the dissent's reasoning, anyone present inside the home will assume the police are "on their trail" and try to destroy evidence of the drugs.

*Id.* (quoting *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973)).

Even when police do not conduct a lawful search, voluntary consent to search given after an illegal entry may still render the seized evidence admissible. *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). But consent to search given after an illegal entry is not voluntary unless the State can "prove by clear and convincing evidence that the taint inherent in the illegality had dissipated by the time consent is given." *Stone v. State*, 279 S.W.3d 688, 693 (Tex. App.—Amarillo 2006, pet. ref'd). We evaluate whether the taint of an illegal entry has dissipated using the six *Brick v. State* factors:

> (1) the proximity of the consent to the [illegal entry;] (2) whether the [illegal entry] brought about police observation of the particular object which they sought consent to search[;] (3) whether the illegal [entry] was 'flagrant police misconduct'[;] (4) whether the consent was volunteered rather than requested by the detaining officers[;] (5) whether the [resident] was made fully aware of the fact that he could decline to consent and thus prevent an immediate search of the . . . residence[;] and (6) whether the police purpose underlying the illegality was to obtain the consent.

*Brick v. State*, 738 S.W.2d 676, 680–81 (Tex. Crim. App. 1987); *accord Leal v. State*, 773 S.W.2d 296, 297 (Tex. Crim. App. 1989) (requiring analysis of the *Brick* factors to determine "whether the taint stemming from the unlawful entry was sufficiently attenuated" to render consent voluntary).

## C.    Analysis

In order to determine whether the State met its burden of demonstrating both probable cause and exigent circumstances, or, alternatively, voluntary consent, we ordinarily are restricted to a review of the record as it existed at the time of the suppression hearing. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000) (stating evidence heard at trial but not at suppression hearing is not relevant). However, the general rule is inapplicable where the State raises the suppression issues at trial "either without objection or with subsequent participation in the

inquiry by the defense." *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). In such a case, we may consider the relevant trial testimony. *Id.* Here, the State argues the suppression issues were re-litigated at trial without defense objection. Regardless, whether we consider the record only as it existed at the suppression hearing or in its entirety, we conclude the State failed to meet its burden of demonstrating a lawful warrantless search.

In this case, the record as it existed at the time of the suppression hearing is particularly scant. In fact, the record before this court indicates that all the trial court had before it at the time of the hearing was appellant's motion to suppress, appellant's testimony, and the arresting officer's police report. Appellant testified that on February 11, 2010, Christopher Lopez, an investigator for Child Protective Services, knocked on appellant's front door while Deputy Santos Chavarria, a sheriff's officer with the Bexar County Sheriff's Office, "hid[] from out of sight . . . of the peephole." Appellant testified that when he "barely cracked open the door[]," Deputy Chavarria "pushed his way in with his hand, pointing his taser gun in my face, saying to turn around and put my hands behind my back. . . . And he put me in handcuffs and sat me down." At that point, appellant testified he gave Deputy Chavarria consent to search in a blue backpack nearby.[3] Deputy Chavarria found a bag of marijuana inside the backpack and placed appellant under arrest.

The State, which had the burden of proving a lawful entry and search, did not call Deputy Chavarria to testify during the hearing, but rather produced only his report, which contained the following handwritten statement:

> I was dispatched as a civil standby to contact [Lopez] for possible narcotics use at listed location. Upon arrival, [Lopez] stated [he] had just previously knocked on door of listed apartment to conduct a [Child Protective Services] investigation of [appellant's girlfriend] who resides at listed apartment. [Lopez] smelled a strong

---

[3] Later at trial, Deputy Chavarria testified appellant was no longer in handcuffs when he gave consent to search the blue backpack.

odor of marijuana and contacted [Bexar County Sheriff's Office] upon speaking with a Hispanic male who opened the door. I followed [Lopez] who knocked on door of listed location. [Appellant] who answered and opened the apartment door, was contacted after I smelled a strong fresh odor of marijuana. [Appellant] was sitting on the couch in the living room and began to cry when I asked if marijuana was in the apartment. [Appellant] pointed to a blue backpack next to [appellant] who signed a consent to search of premises. [Appellant] then opened the backpack and removed [the marijuana] from an unsecured brown box witnessed by [Lopez]. [Appellant] was crying stating [appellant] is father of [appellant's girlfriend]'s baby and doesn't want [appellant's girlfriend] to be charged with any crime. [Appellant] stated repeatedly [the marijuana] belonged to [appellant] and was for personal use only. I recovered [the marijuana], took [appellant] into custody and [appellant's girlfriend] arrived shortly prior to my departure. I transported [appellant] to 401 S. Frio for booking process. [Appellant] stated [he] has been staying with [his girlfriend] for about three months but temporarily. [Appellant's girlfriend] was interviewed by [Lopez] who has issued case number. [The marijuana] was placed into evidence at 200 N. Comal Property Room.

At trial, the State presented a more complete portrait of the events with both Deputy Chavarria's and Lopez's testimony. Lopez testified he went to the apartment where appellant, his girlfriend, and their six-month-old child were living in order to investigate a report that marijuana was being used inside the home. When Lopez arrived at the apartment and knocked on the door, appellant partially opened the door and poked his head out to answer. Lopez identified himself and stated he was there to speak with appellant's girlfriend. Appellant told him his girlfriend was not home and would be back later in the afternoon. Lopez asked if the child was in the apartment, and appellant told him no, the child was with his girlfriend.

Lopez testified he left and immediately called his supervisor to report that he had detected a "very, very strong smell of marijuana" coming from the apartment. Lopez then called the Bexar County Sheriff's Department to request that a sheriff's officer accompany him back to the apartment in order to verify whether the child was present. Deputy Chavarria escorted Lopez back to the apartment about an hour later. Lopez knocked on the door while Deputy Chavarria stood out of view of the door's peephole. When appellant cracked the door open and poked his

head out, both Lopez and Deputy Chavarria smelled a "strong" odor of marijuana. Deputy Chavarria testified: "[Appellant] opened the door, and I put my arm on the door to keep him from closing it, and I walked in and placed [appellant] on the ground and handcuffed him." Deputy Chavarria also testified he removed and displayed his taser gun while entering the apartment "because at that point, I wanted compliance." When asked why he put his arm on the door, Deputy Chavarria explained: "At that point, it was an issue of destruction of evidence. If there is evidence, if there is marijuana in the house, I have to prevent it from being destroyed and I have to secure it, I guess for the actual offense and the arrest, and the judicial procedure."

Deputy Chavarria testified that Lopez then entered the apartment while Deputy Chavarria searched appellant and the immediate surrounding area for weapons. Once Deputy Chavarria determined appellant was unarmed and did not have access to weapons within arm's reach, he sat appellant on the couch and removed the handcuffs. Deputy Chavarria asked appellant if there was marijuana in the home, and appellant said there was marijuana present and it belonged to him. Appellant began crying. Deputy Chavarria asked appellant where the marijuana was in the apartment, and appellant indicated a blue backpack within his reach. Deputy Chavarria asked appellant to sign a consent to search form, and appellant signed it. On Deputy Chavarria's request, appellant opened the backpack, removed a brown box, and opened it, revealing a plastic bag containing marijuana. Deputy Chavarria placed appellant under arrest. Appellant's child was not present at the apartment.

Both Deputy Chavarria's testimony and his report reflect that he was dispatched to appellant's residence to investigate "possible narcotics use" and he smelled "a strong fresh odor of marijuana" when appellant answered the door. We will assume there was probable cause for a search warrant based on Lopez's report of a "very, very strong smell of marijuana" coming from

the apartment. However, the record does not support the existence of exigent circumstances requiring immediate entry into the apartment without first obtaining a warrant. Deputy Chavarria testified that he acted to prevent the destruction of marijuana inside the apartment, but nothing in the record suggests that destruction of evidence was a risk under the circumstances. Appellant willingly answered the door both times Lopez knocked and did not make any movement as if he were about to destroy evidence, such as by darting away from the door or attempting to close it after seeing who was knocking. In fact, because Deputy Chavarria stood out of sight of the peephole when Lopez knocked the second time, there is nothing to suggest appellant was even aware of any police involvement when he opened the door.[4] Deputy Chavarria did not testify that he observed anything to suggest imminent destruction or removal of evidence; rather, he forced his way into the apartment immediately after appellant voluntarily opened the door. Accordingly, the State did not meet its burden of demonstrating that both probable cause and exigent circumstances justified Deputy Chavarria's warrantless entry into appellant's residence.

As to whether appellant gave voluntary consent to search, the State again failed to meet its burden. Neither Deputy Chavarria's testimony nor his report contains clear and convincing evidence that the taint of any illegality had dissipated by the time appellant gave consent to search. It is unclear from the record how much time elapsed between the entry and the consent. Deputy Chavarria testified that when appellant gave consent to search he was no longer in handcuffs but was "not free to leave" because he was detained, and Deputy Chavarria had removed his taser gun and was holding it in his hand at the time. Deputy Chavarria also testified

---

[4] Even if appellant knew Deputy Chavarria was on the other side of the door, we disagree with the dissent's conclusion that appellant was aware the police were "on his trail" when he opened the door. Appellant could have assumed Lopez and the deputy were at the door for the purpose of investigating appellant's girlfriend, which was the purpose of Lopez's initial visit to the residence.

he did not give appellant *Miranda* warnings, and it is unclear whether appellant was made fully aware that he could decline to consent to search. Based on these facts, the State failed to demonstrate that the taint of any illegality in Deputy Chavarria's entry into the apartment had dissipated by the time appellant gave consent to search.

## CONCLUSION

For the reasons stated above, we conclude the State did not meet its burden of proof by demonstrating that both probable cause and exigent circumstances justified the warrantless entry, or that the taint of any illegal entry had dissipated by the time appellant gave consent to search. Accordingly, we reverse the trial court's order on the motion to suppress and remand this case to the trial court for further proceedings consistent with this opinion.[5]

Sandee Bryan Marion, Justice

Publish

---

[5] We do not address appellant's second issue because it is not necessary for resolution of this appeal. *See* TEX. R. APP. P. 47.1.