In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00090-CR
_____

THE STATE OF TEXAS, Appellant

V.

MIESHA VALRAE ROBINSON, Appellee

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause No. CR31304

MEMORANDUM OPINION

In this case, the State appeals from an order granting a motion filed by the defendant to suppress the evidence seized by a state trooper following the trooper's warrantless search of Miesha Valrae Robinson's car. *See* Tex. Health & Safety Code Ann. § 481.112(a), (f) (West 2010). In the hearing on her motion to suppress, Robinson argued that the trooper conducted a pretextual stop, that the stop was unduly prolonged, given that the stated purpose of the stop was to issue a warning

1

for speeding, and that no legitimate basis existed justifying the trooper's decision to extend the mission of the stop to include a search of Robinson's car. Following the hearing the trial court conducted on Robinson's motion, the trial court determined that the facts known to the trooper did not justify his decision to extend his investigation beyond the relatively brief period needed for the trooper to give Robinson a warning for speeding. Further, the trial court found that although Robinson consented to the request the trooper made to search her car, she consented after the legitimate purpose that led to the stop had ended. The trial court concluded that Robinson's consent to the search was invalid, it granted Robinson's motion to suppress, and ruled that the State would not be allowed to introduce testimony or evidence indicating what the trooper found during the search he conducted on Robinson's car. Given the highly deferential standard that applies to an appellate court's review of suppression rulings, we hold the trial court did not abuse its discretion by granting Robinson's motion.

Background

Prior to the trial, the trial court conducted a hearing on Robinson's motion to suppress. During the hearing, the State stipulated that the trooper searched

2

Robinson's car without a warrant.[1] Therefore, at the hearing, the State bore the burden of proving that the trooper reasonably decided to search Robinson's car based on the facts that became available to him during the stop. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007).

The trooper was the sole witness who testified in the suppression hearing. In his testimony, the trooper indicated that he stopped Robinson's car one evening on U.S. Highway 59 in Liberty County, an area the trooper described as a known corridor for transporting drugs. The trooper's testimony reflects that he did not have his radar on when Robinson's car passed him while he was stopped next to the highway, but he decided to follow Robinson because her car had out-of-state plates and he felt that her car was "overly clean." Approximately two minutes after the trooper began following Robinson, he stopped Robinson for driving her car five miles-per-hour over the posted speed limit.

After stopping Robinson, the trooper approached the car's passenger window. According to the trooper, when Robinson rolled down her window, he smelled a strong odor of air freshener. The trooper's testimony, and video-footage of the stop that was captured by a camera in the trooper's SUV, indicates that

---

[1] A traffic stop based on a police officer's suspected violation of law constitutes a "seizure" of the individuals that occupy the car; therefore, the seizure is required to be conducted in accordance with the Fourth Amendment. *Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014).

within a minute after the stop, the trooper told Robinson that he intended to give her a warning for speeding. Nevertheless, the trooper then asked Robinson to leave her car and accompany him to his SUV.

Once Robinson was in the trooper's SUV, the evidence before the trial court indicates that the trooper continued to question Robinson about the purpose of her trip. According to the trooper, the reasons Robinson gave him to explain why she was traveling made him question whether she was telling him the truth. The trooper also indicated that Robinson's nervousness, which the trooper testified he noticed shortly after the stop, did not subside even though he told Robinson shortly after stopping her that she was going to be given a warning. According to the trooper, he was suspicious that a crime had been committed based on Robinson's demeanor, and the "indicators" that he had "seen in the car."[2] While talking to Robinson in his car, the trooper requested and then obtained information from a

_____

[2] The "indicators" the trooper mentioned in his testimony were that Robinson's explanation about the reasons for her travel did not strike him as plausible, that she was driving a car with out-of-state plates, that he could smell air freshener coming from the car when Robinson rolled down the car's window, that the key in the ignition of Robinson's car was not on a keychain with other keys, that Robinson's car was very clean, and that Robinson's hands were shaking when she handed him various documents. The evidence from the hearing shows that Robinson told the trooper that she was traveling from her home in Houston to see her brother in Ohio, and that she had borrowed the car from him because her car had been in a wreck. The trooper testified that the smell of air freshener coming from Robinson's car was the first thing that caused him to think that Robinson might be engaged in criminal activity.

computer about Robinson's driving history and the car. The information the trooper obtained from the computer showed that Robinson did not have any outstanding warrants for her arrest, and the information he received also showed that the car she was driving was not stolen. The videotape of the stop shows that the trooper asked Robinson if he could search her car while she was seated in his SUV, and that his request occurred approximately seven minutes into the stop. The videotape also shows that Robinson immediately agreed to the trooper's request and that she did not question the trooper about why he wanted to search her car.

In its written findings, the trial court concluded that the trooper's decision to stop Robinson for speeding was valid. However, the trial court also found that the evidence the trooper subsequently gathered did not reveal facts sufficient to reasonably justify Robinson's detention beyond the period required to issue a warning. The trial court concluded that at the point the trooper asked for permission to search her car, the detention was unduly prolonged, and the trial court ruled that Robinson's consent to the search was not valid.

Standard of Review

In reviewing the trial court's ruling on such motions, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Flores v. State*, 177 S.W.3d 8, 14 (Tex. App.—Houston [1st Dist.] 2005,

5

pet. ref'd). Instead, as to a suppression ruling, the trial judge is the sole trier of any disputed facts; therefore, the appeals court does not second-guess the trial court's evaluations relating to the credibility of the witnesses who testified in the hearing or the trial court's decisions about the weight that it chose to assign to any of the testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). As an intermediate appeals court, the standard used to review a trial court's ruling on a motion to suppress depends on whether the matters the trial court resolved are characterized as questions of fact, mixed questions of fact and law, or pure questions of law. *Amador*, 221 S.W.3d at 673. When the dispute falls in the first two categories, which is the case in this appeal, the appeals court is required to give almost total deference to the trial court's ruling on the motion. *Id*. Additionally, we are required to affirm a suppression ruling to exclude evidence discovered in a warrantless search when the trial court's ruling is reasonably supported by the record and the ruling is correct on any theory of law that applies to the case. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Under this rule, we must "determine whether the trial court could have reasonably [ruled as it did] given the record evidence and given the applicable federal and state law." *State v. White*, 306

6

S.W.3d 753, 757 n.10 (Tex. Crim. App. 2010) (citing *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003)).

Under the Fourth Amendment, a police officer's decision to temporarily detain an individual following a traffic stop may be justified on less than probable cause if the evidence from the hearing establishes specific and articulable facts showing that the officer reasonably suspected that the defendant was or soon would be involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Reasonable suspicion exists if, from the totality of the circumstances, the facts proven during the hearing demonstrate that a reasonable person would have believed based on those facts that the individual who the officer detained was or soon would be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005). This standard requires that courts look solely at whether an objective basis for the search existed, as the trial court, in evaluating the officer's testimony about the stop, is required to disregard the officer's subjective intent. *Id.* The Court of Criminal Appeals has explained that "[a] police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*,

348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The reasonable suspicion standard "also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id.*

Analysis

In Robinson's case, the trial court determined that the reason the trooper articulated as the basis for his decision to stop Robison's car was valid based on the objective facts the officer testified to during the hearing. However, the trial court then determined the trooper unlawfully prolonged the stop and failed to articulate a reasonably objective basis for having done so.

The United States Supreme Court has given the following guidance regarding the duration the law will tolerate after an officer conducts a routine traffic stop:

> A seizure for a traffic violation justifies a police investigation of that violation. "[A] relatively brief encounter," a routine traffic stop is "more analogous to a so-called '*Terry* stop' . . . than to a formal arrest. Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

8

. . . .

> Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquires incident to [the traffic] stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.

*Rodriguez v. U.S.*, 135 S.Ct. 1609, 1614-615 (2015) (citations omitted). Thus, while a stop based on a traffic violation is permissible, the police may not use the stop as a "'fishing expedition for unrelated criminal activity.'" *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (quoting *Ohio v. Robinette*, 117 S.Ct. 417, 422 (1996) (Ginsberg J., concurring)); *see also Kothe v. State*, 152 S.W.3d 54, 64 (Tex. Crim. App. 2004). "If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'" *Rodriguez*, 135 S.Ct. at 1616 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "[A] traffic stop 'prolonged beyond' that point is 'unlawful.'" *Id.*

In this case, the trial court determined that the purpose of the trooper's mission to warn Robinson for speeding ended before the point that he asked Robinson whether she would allow him to search her car. Nonetheless, the evidence shows that Robinson consented to the request, and generally, a defendant's consent to an officer's request to conduct a search is an exception to

the Fourth Amendment's requirement that a search be conducted with a search warrant supported by probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). Under Texas law, whether a person's consent to an officer's request to conduct a search is valid is a question of fact, and the State bears the burden to prove by clear and convincing evidence that the defendant voluntarily consented to the search. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007); *Carmouche*, 10 S.W.3d at 331 (instructing that "'voluntariness is a question of fact to be determined from all the circumstances'") (quoting *Robinette*, 519 U.S. at 40). While the question of whether the defendant voluntarily consented is resolved based on the totality of the circumstances surrounding the request, "[t]he ultimate question is whether the person's 'will ha[s] been overborne and his capacity for self-determination critically impaired,' such that his consent to search must have been involuntary." *Meekins*, 340 S.W.3d at 459 (citing *United States v. Watson*, 423 U.S. 411, 424 (1976) (quoting *Schneckloth*, 412 U.S. at 225)). And, "[b]ecause issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous." *Meekins*, 340 S.W.3d at 460.

10

In this case, the trial court determined that Robinson gave her consent after the legitimate purposes of the trooper's mission had ended. Given the trial court's right to determine, as a mixed question of law and fact, the point at which the legitimate purposes of the officer's mission ended, a defendant's consent, even if apparently voluntary, can nevertheless be tainted by the illegal detention such that the consent, as well as the evidence found in the search, are both considered inadmissible as the "fruits" of the unduly prolonged detention. *See Florida v. Royer*, 460 U.S. 491, 501 (1983); *Brick v. State*, 738 S.W.2d 676, 678-81 (Tex. Crim. App. 1987); *see also Arcila v. State*, 834 S.W.2d 357, 358-59 (Tex. Crim. App. 1992), *overruled on other grounds by Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997). Where the search occurred following an unduly prolonged detention, the State must show that the taint of any illegality that arises from the defendant's unduly prolonged detention had sufficiently dissipated at the point the defendant consented to the officer's request to conduct the search. *Brick*, 738 S.W.2d at 681.

In *Brick*, a case where a defendant consented to a search after the legitimate mission for the investigation by police ended, the Court of Criminal Appeals identified the following six factors as relevant to conducting an attenuation-of-taint analysis: (1) the proximity of the defendant's consent to the arrest; (2) whether the

11

seizure occurred because the officer had observed the object that they subsequently seized in their search; (3) whether the illegal seizure was the result of flagrant police misconduct; (4) whether the defendant volunteered her consent without it having been requested; (5) whether the defendant was fully aware that she could decline the search and by doing so, prevent the immediate search that the officer was requesting; and (6) whether the police purposefully used the unduly prolonged detention in an effort to obtain the defendant's consent. 738 S.W.2d at 680-81. Approximately twenty-five years after deciding *Brick*, the Court of Criminal Appeals identified the following factors as relevant to an attenuation-of-taint analysis: (1) the temporal proximity between the illegal detention and the search, (2) the presence of any intervening circumstances, and (3) the purpose and flagrancy of any police misconduct. *State v. Mazuca*, 375 S.W.3d 294, 301-07 (Tex. Crim. App. 2012); *see also Brown v. Illinois*, 422 U.S. 590, 595 (1975).

In Robinson's case, the trial court found the trooper prolonged the stop beyond the time reasonably needed to warn Robinson that she had been speeding. The trial court also found the trooper failed to articulate facts sufficient to allow him to reasonably broaden the investigation for speeding to include requesting that Robinson consent to the trooper's request to search her car. And, the trial court concluded that Robinson's consent was invalid based on its determination that the

trooper's mission had ended before the trooper asked Robinson whether she would permit the search.

When viewed from the highly deferential standard required for questions of fact and mixed questions of fact and law, the record contains evidence that supports the trial court's view about the search. The record shows that the trooper continued questioning Robinson, even though the trooper knew she had no outstanding warrants and that her car was not stolen. While the trooper indicated that he was skeptical about Robinson's account of her travels, the trial judge could have reasonably viewed her account as believable, as the trial court was not required to accept the officer's subjective view that her account was not credible. Likewise, as the finder of historical fact, the trial court acted within its authority to reject the trooper's subjective impression that Robinson was overly nervous under the circumstances surrounding the stop. Given the trial court's role as the finder of historical fact, the trial court's conclusion that the trooper failed to articulate sufficient facts to justify extending his mission so that it included searching Robinson's car was not unreasonable.

Therefore, we must determine whether the trial court abused its discretion in concluding that Robinson's illegal detention tainted her consent such that the State was barred from proving at trial that she consented to the search and that the

trooper discovered contraband in her car following his search. *Mazuca,* 375 S.W.3d at 302. In its brief, the State focused solely on whether Robinson's consent to the search was voluntary, and it failed to discuss whether the trial court abused its discretion by concluding that the taint of Robinson's illegal detention made the search illegal. We evaluate the attenuation factors by the structure the Court of Criminal Appeals identified in *Mazuca*, as the flexibility of the factors in *Mazuca* allows courts to evaluate any factors that a court might view as relevant in conducting the attenuation analysis the Court of Criminal Appeals required be conducted in *Brick. Compare Mazuca*, 375 S.W.3d at 301-07, *with Brick*, 738 S.W.2d at 680-81.

First, we address the proximity between the point that the detention became illegally prolonged and the point the search occurred. In this case, one minute, at most, passed between the point the trial court decided the trooper had all the information needed to complete his mission and warn Robinson for speeding and the point the trooper asked Robinson if she would allow him to search her car. The videotape shows that the officer began to search Robinson's car approximately three minutes after she agreed to allow him to conduct the search. Nonetheless, the testimony from the hearing and the videotape of the stop support the trial court's view that nothing of consequence occurred to attenuate the taint of Robinson's

14

prolonged detention and the search of her car. In our opinion, the first attenuation factor in *Mazuca* favors affirming the trial court's ruling. *See Mazuca*, 375 S.W.2d at 301-07.

With respect to the second factor, whether intervening circumstances exist relevant to attenuating the taint, the record also supports the trial court's view that no intervening circumstances exist that favor overturning the trial court's ruling. For example, the trooper did not tell Robinson that she could refuse the trooper's request. Additionally, the trooper requested that Robinson consent to the search: her consent was not volunteered. Moreover, the trooper found the cocaine in a hidden compartment in the car, so the cocaine the trooper found during the search of Robinson's car was not in the trooper's view at any point prior to the search.

Turning to the third factor, courts do not ordinarily deem police misconduct as "flagrant" unless the police engaged in the conduct for the purpose of obtaining the defendant's consent, or if the evidence shows that the purpose of the misconduct was to cause surprise or fear. *See Beaver v. State*, 106 S.W.3d 243, 250-51 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Garcia v. State*, 3 S.W.3d 227, 243 (Tex. App.—Houston [14th Dist.] 1999), *aff'd*, 43 S.W.3d 527 (Tex. Crim. App. 2001) (stating that police conduct is flagrant if it is for the purpose of obtaining the consent). In this case, the hearing shows the trial court

thought the trooper conducted the stop in a manner designed to allow him to broaden the information that he needed well beyond that required to issue a warning for speeding. In the trial court's view, the trooper's mission should have ended shortly after he decided that Robinson should be warned for speeding. The trial court's view of the record, which views the trooper's conduct in prolonging the stop as designed to induce Robinson to consent, is a view that we cannot say on this record was unreasonable. Considered in the light most favorable to the trial court's ruling, the third attenuation factor identified in *Mazuca* also favors affirming the trial court's ruling. *Mazuca*, 375 S.W.3d at 301-07.

Given the highly deferential standard of review that applies to suppression rulings, we conclude the State failed to demonstrate that the trial court abused its discretion by granting Robinson's motion to suppress. We overrule the State's issues and affirm the trial court's order.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 15, 2016
Opinion Delivered November 16, 2016
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.